962 A.2d 515

M.S., PLAINTIFF–APPELLANT, v. MILLBURN POLICE DEPART-MENT, DEFENDANT, AND OFFICE OF THE ESSEX COUN-TY PROSECUTOR, DEFENDANT–RESPONDENT.

Argued September 23, 2008—Decided December 23, 2008.

*Jason R. Melzer* argued the cause for appellant (*Cole, Schotz, Meisel, Forman & Leonard,* attorneys).

*Kenneth P. Ply,* Assistant Prosecutor, argued the cause for respondent (*Paula T. Dow,* Essex County Prosecutor, attorney; *Mr. Ply* and *Sara A. Friedman,* Assistant Prosecutor, on the letter briefs).

Justice ALBIN delivered the opinion of the Court.

In 1997, plaintiff was issued a domestic violence complaint and a restraining order, and the police seized plaintiff's five handguns and his firearms purchaser identification card (firearms card). The Essex County Prosecutor's Office then filed a petition to forfeit those handguns pursuant to *N.J.S.A.* 2C:25–21(d)(3) of the Prevention of Domestic Violence Act of 1991 (Domestic Violence Forfeiture Statute). Plaintiff entered into a consent judgment with the Prosecutor's Office in which he agreed to sell the firearms or, otherwise, surrender title to the weapons. Plaintiff

sold the weapons. The consent judgment did not provide for the forfeiture of his firearms card. No hearing was ever held to determine whether plaintiff committed an act that disqualified him from obtaining a firearm. Nor did plaintiff admit to any disqualifying act.

In 2005, the Millburn Township Police Department refused to return plaintiff's firearms card on the basis that his previously seized weapons were not "returned" and therefore he was permanently barred from possessing a firearm under *N.J.S.A.* 2C:58–3(c)(8), a newly enacted disability provision of the Gun Control Law. Plaintiff filed an action in lieu of prerogative writs for the return of the firearms card. The Law Division granted summary judgment in plaintiff's favor and ordered the return of the card, finding that the 2004 law did not apply to the 1997 consent judgment and that the Prosecutor's Office could institute proceedings if plaintiff was otherwise disqualified from possessing a firearm. The Appellate Division overturned that decision and directed that the firearms card be withheld from plaintiff. It concluded that the new law applied because, under the plain language of *N.J.S.A.* 2C:58-3 (c)(8), plaintiff's previously seized firearms were not "returned" to him.

We now reverse the Appellate Division. By entering into the consent judgment, plaintiff did not admit to a statutory basis for forfeiting his right to possess a firearms card or a firearm under the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3). Nor was there a judicial finding that plaintiff forfeited his right to a firearms card or to possess a firearm under that statute. Therefore, plaintiff is entitled to a hearing to determine whether, at the time he entered into the consent judgment, the Prosecutor's Office was capable of proving that he had committed an act that warranted the forfeiture of his firearms. If the Prosecutor's Office can meet that burden, then it will have shown that the weapons were not "returned" for a reason grounded in *N.J.S.A.* 2C:25–21(d)(3) and that plaintiff is not entitled to possess a firearms card. At the hearing, the Prosecutor's Office shall also

be given the opportunity of showing whether plaintiff, today, is otherwise disqualified from possessing a weapon under *N.J.S.A.* 2C:58–3(c).

## I.

## A.

This case has its origins in a domestic dispute that occurred more than ten years ago between plaintiff and his then-estranged wife, S.R., who were the parents of five children.[1] In December 1996, S.R. moved out of the marital home into her own apartment. On January 10, 1997, plaintiff claims that his wife appeared at the marital home and made physical threats, including threats to commit suicide. As a result, he called the police. When two officers arrived at the home, S.R. was acting violently, causing the officers to wrestle her to the ground, handcuff her, and forcibly remove her from the residence. Plaintiff filed a domestic violence complaint against his wife.

Three days later, Millburn Township police officers arrived at plaintiff's home and handed him two domestic violence complaints filed by his wife, alleging that he had assaulted her and uttered terroristic threats. The officers also served him with a temporary restraining order prohibiting him from having contact with S.R., two court summonses charging him with "threats and assault," and a warrant authorizing the officers to seize all of his firearms. With plaintiff's cooperation, the officers took possession of his firearms card, ammunition, holsters, and other firearms parapher-nalia. Plaintiff told the officers that he stored all of his weapons and additional ammunition at his business office in Florham Park.

---

[1] This appeal is taken from the Appellate Division's grant of summary judgment, dismissing plaintiff's prerogative writs action seeking return of his firearms card. In this procedural posture, because there are material facts that may be in dispute, we are required to view the evidence in the light most favorable to plaintiff, who was the party that opposed summary judgment. *See R.* 4:46–2(c); *Brill v. Guardian Life Ins. Co. of Am.*, 142 *N.J.* 520, 540, 666 A.2d 146 (1995). The facts presented mostly come from plaintiff's verified complaint in lieu of prerogative writs filed in September 2005.

Plaintiff accompanied the officers to his office where, assisted by a Florham Park police officer, they seized from a vault five handguns (one .45 Caliber Smith & Wesson Model 1998, one .38 Caliber Colt Detective Special, one 9mm Walther Model PPK5, one 9mm Smith & Wesson Model 915, and one 9mm Glock Model 9X19), ammunition, holsters, and other related items.

Although his wife alleged to the police that plaintiff had pointed a loaded gun at her "on numerous occasions," according to a Millburn Police Department Incident Report, no criminal complaints were issued by the Essex County Prosecutor's Office "because [S.R.] was unable to give specific dates and times of the occurrences."

On January 15, 1997, at a domestic violence hearing, with the consent of both plaintiff and S.R., the family court entered mutual final restraining orders against both parties and left plaintiff in the marital domicile with temporary custody of their five children. The final restraining order made no reference to firearms. Plaintiff later explained that his "sole intention in consenting to the entry of the mutual [f]inal [r]estraining [o]rders was to prevent the couple's five children from experiencing any more threatening and dangerous episodes caused by [his wife]."

On February 27, 1997, the Essex County Prosecutor's Office filed with the Essex County Family Part, Chancery Division, a verified petition to forfeit the five seized handguns. The petition alleged that plaintiff's conduct on January 13,[2] "and other dates[,] ... disqualif[ied] him from obtaining a permit to purchase a handgun or a firearms purchaser identification card under *N.J.S.A.* 2C:58–3." [3] The petition stated that plaintiff committed acts of domestic violence and that "criminal complaints were

---

[2] The use of the January 13 date in the petition apparently is an error. The conduct complained of actually occurred on January 10.

[3] A firearms purchaser identification card is required before a person can "receive, purchase or otherwise acquire an antique cannon or a rifle or shotgun." *N.J.S.A.* 2C:58–3(b). A handgun cannot be purchased or acquired with a

signed charging" plaintiff with "threatening and assaulting" his wife.[4] Although the petition averred that on January 13, 1997, plaintiff did not have a firearms card, that assertion was clearly mistaken because the Millburn Police Department seized plaintiff's card from his home on that date.[5]

On March 3, 1997, the criminal complaints filed against plaintiff were dismissed in the Millburn Municipal Court.

Based on the consent of plaintiff and the Essex County Prosecutor's Office, on April 18, 1997, the family court entered judgment on the forfeiture complaint, allowing plaintiff "the opportunity to sell" the five handguns "to a registered dealer of firearms" on or before October 11, 1997. In the event that the handguns were not sold by that date, the consent judgment provided that they would be forfeited to the State of New Jersey.[6] The consent judgment did not provide for the forfeiture of plaintiff's firearms card, which remained in the possession of the Millburn Police Department. Nor did the judgment contain any admission by plaintiff that he

---

firearms purchaser identification card. A handgun can only be acquired if a person is issued a permit to purchase a handgun. *N.J.S.A.* 2C:58–3(a).

[4] Plaintiff was charged with the third-degree crime of threat to kill, *N.J.S.A.* 2C:12–3(b). That charge was downgraded to the petty disorderly persons offense of harassment, *N.J.S.A.* 2C:33–4. Plaintiff also was charged with the disorderly persons offense of simple assault, *N.J.S.A.* 2C:12–1(a)(1).

[5] The forfeiture petition also averred that plaintiff "did not have a permit to purchase a handgun." Had plaintiff purchased five handguns in New Jersey without first obtaining such a permit, he would have committed five fourth-degree crimes. *N.J.S.A.* 2C:39–10(a)(1). Plaintiff was not prosecuted for any weapons offense relating to the seizure of his handguns.

[6] Plaintiff purportedly sold all five handguns to Paterson Gunsmithing, Inc. for one dollar. A representative of that company then picked up the handguns, holsters, and ammunition in May 1997. According to a memorandum from Mariana S. Trieschmann, Lieutenant of County Investigators, Paterson Gunsmithing has kept the firearms in storage since it took possession of them with the understanding that plaintiff would seek to retrieve them after his firearms card is returned to him. Apparently, plaintiff's brother, for some time, paid the storage costs.

had committed any act that disqualified him from possessing a firearm.

That same year, plaintiff filed a divorce action, which ultimately resulted in the family court granting plaintiff "sole residential custody of the couple's five children." On November 29, 2000, at the request of S.R., the family court dismissed all restraints pertaining to the final restraining order entered against plaintiff three years earlier.[7]

### B.

In September 2005, plaintiff filed a complaint in lieu of prerogative writs in the Essex County Law Division, Civil Part seeking the following relief: an order compelling the Millburn Township Police Department and the Essex County Prosecutor's Office to return his firearms card or, alternatively, compelling the Millburn Police Department to issue him a new card.[8] Plaintiff submits that he is entitled to the return of his firearms card because the Prosecutor's Office failed to seek the card's forfeiture within forty-five days after its seizure, as required by the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3).

In their answers, the Essex County Prosecutor's Office and Millburn Township [9] declared that the firearms card could not be

---

[7] The court also dismissed the restraining order entered against S.R. at plaintiff's request.

[8] There is no need to detail at length the tortuous procedural history that led to the filing of plaintiff's prerogative writs complaint. Suffice it to say, in 2005, plaintiff's application seeking to vacate the consent judgment forfeiting his firearms and to obtain the return of his firearms card was denied without prejudice by the Essex County Chancery Division, Family Part, for lack of venue. Plaintiff then filed a motion for return of the card in the Law Division, Criminal Part. The criminal court judge ordered the matter transferred to the Law Division, Civil Part, because of the "civil nature" of the application. Then, plaintiff filed a verified complaint in lieu of prerogative writs in the Civil Part.

[9] Millburn Township claims that it is the true defendant, not the police department, which was improperly pled as a party.

returned to plaintiff because *N.J.S.A.* 2C:58–3(c)(8), which went into effect in January 2004, barred plaintiff from owning or possessing a firearm. According to the Prosecutor's Office and the Township, because plaintiff's five handguns were seized in relation to the 1997 domestic violence complaint and not returned to him, he was disqualified from owning or possessing a firearm under *N.J.S.A.* 2C:58–3(c)(8). Under that theory, returning the firearms card to plaintiff would be facilitating a crime.

Both plaintiff and the Prosecutor's Office filed motions for summary judgment. After hearing extensive arguments, the Law Division granted summary judgment in favor of plaintiff and denied the Prosecutor's cross-motion. The court first ruled that the Prosecutor's Office "knowingly waived its right to seek the revocation of the [firearms card]" by failing to address the subject in the consent judgment. As the court noted, "the consent order does not even prohibit [plaintiff] from purchasing firearms in the future." Next, the court acknowledged that, according to *N.J.S.A.* 2C:58–3(c), a firearms card is only "valid until such time as the holder becomes subject to any of the disqualifications set forth in [*N.J.S.A.* 2C:58–3(c) ]." The court, however, found that the 1997 version of *N.J.S.A.* 2C:58–3(c) did not disqualify plaintiff from possession of a firearm because the final domestic violence re-straining order specifically did not preclude plaintiff from possessing a weapon.

The court concluded that the addition of *N.J.S.A.* 2C:58–3 (c)(8) to the Gun Control Law in 2004 should not apply retroactively because plaintiff could know only those laws that existed when "he entered into the consent order" in 1997. The court also found inapplicable the 2004 enactment of *N.J.S.A.* 2C:25–29 (b), which "bar[s] the defendant from receiving or retaining a firearms purchaser identification card during the period of the restraining order . . . or two years [from the issuance of the order], whichever is greater." The 1997 restraining order against plaintiff had been dissolved in 2000. Because no statutory or other legal basis arising from the 1997 consent judgment barred Millburn Township

from returning the firearms card to plaintiff, the court ordered its return within three business days. The court declined to enter a stay of its order. The court, however, noted that under *N.J.S.A.* 2C:58–3(f) the Prosecutor's Office still could move to revoke plaintiff's firearms card if plaintiff currently " 'no longer qualifies' " for such a permit.

## C.

The Appellate Division reversed and ordered that the "Millburn Police Department may continue to hold [plaintiff's firearms card], or destroy it." *M.S. v. Millburn Police Dep't*, 395 *N.J.Super.* 638, 643, 930 *A.*2d 481 (App.Div.2007). First, the appellate panel acknowledged that at the time of and immediately after the entry of the 1997 consent judgment, no law prohibited plaintiff from applying for a firearms card. *Id.* at 642, 930 *A.*2d 481. It also acknowledged that the family court could have included in the 1997 restraining order a specific provision prohibiting plaintiff from possessing a firearm, *N.J.S.A.* 2C:25–29(b). *Ibid.* No such provision was placed in the restraining order. *Ibid.*

Nevertheless, the panel held that *N.J.S.A.* 2C:58–3 (c)(8), which became effective in January 2004, governed whether plaintiff was entitled to possess a firearm at the time he applied for the return of his firearms card. *Id.* at 642–43, 930 *A.*2d 481. *N.J.S.A.* 2C:58–3(c)(8) provides that a firearms card shall not "be issued [t]o any person whose firearm is seized pursuant to the Prevention of Domestic Violence Act of 1991 … [and] has not been returned." *Id.* at 642, 930 *A.*2d 481 (internal quotation marks omitted). The panel simply reasoned that because plaintiff's five firearms were seized in relation to his ex-wife's 1997 domestic violence complaint and were not returned to him, the statute forbids the return of his firearms card or the issuance of a new one. *Id.* at 642–43, 930 *A.*2d 481. The panel determined that *N.J.S.A.* 2C:58–3(c)(8) applied retroactively because "there is nothing in the statute that 'grandfathers in' seizures that preceded the [statute's] enactment" and because carving out "an exemption

would not advance the [statute's] policy." *Id.* at 643, 930 *A.*2d 481. Last, the panel concluded that the Prosecutor could not and did not "waive the statutory disability imposed by *N.J.S.A.* 2C:58–3(c)(8)." *Ibid.*

We granted plaintiff's petition for certification. 193 *N.J.* 223, 936 *A.*2d 969 (2007).

## II.

■ The essential issue in this case is whether *N.J.S.A.* 2C:58–3(c)(8), which became effective in January 2004, by its terms, permanently bars plaintiff from being issued a handgun purchase permit or firearms card.[10] We do not conclude, as the Appellate Division did, that the statute applies *whenever* a firearm seized pursuant to the Prevention of Domestic Violence Act of 1991 is not returned to the owner. Rather, we construe *N.J.S.A.* 2C:58–3(c)(8) to impose a statutory bar to obtaining a gun permit only when a firearm seized in a domestic violence matter is not returned for a *reason* set forth in the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3).

To be clear, this case is not about whether the absence of a provision in the 1997 consent judgment forfeiting plaintiff's firearms card entitles him to the return of the card. If plaintiff, today, is subject to a legal disability, which arose in 1997 and now disqualifies him from possessing a firearm or a firearms card, then Millburn Township clearly has no obligation to return that card to him.

Ultimately, we must determine whether plaintiff's sale of his five seized firearms pursuant to the consent judgment, which resolved the forfeiture complaint, means that his weapons were not returned for a reason set forth in *N.J.S.A.* 2C:25–21(d)(3).

---

[10] Because we review issues of law de novo, we owe no deference to an interpretation of law by the trial court or Appellate Division that may differ from our own. *See Manalapan Realty, L.P. v. Twp. Comm.,* 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995).

The answer to that question requires that we look at the landscape of the law in 1997 and, more particularly, the intersection of two statutory schemes, the Gun Control Law (*N.J.S.A.* 2C:58–1 to –18) and the Prevention of Domestic Violence Act of 1991 (*N.J.S.A.* 2C:25–17 to –35).

### A.

In 1997, when the Essex County Prosecutor's Office filed its petition to forfeit plaintiff's five seized handguns, the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3), set forth the path for pursuing the forfeiture of a firearm or the revocation of a firearms card. Under *N.J.S.A.* 2C:25–21(d)(3), in its then existing form, the Essex County Prosecutor's Office could seek

> to revoke any and all permits, licenses and other authorizations for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership, or [could] object to the return of the weapons on such grounds as are provided for the initial rejection or later revocation of the authorizations, or on the grounds that the owner is unfit or that the owner poses a threat to the public in general or a person or persons in particular.
> [*L.* 1991, c. 261, § 5.]

In 1997, the grounds for rejecting or revoking the issuance of a firearms purchaser identification card or a permit to purchase a handgun were set forth in the Gun Control Law, *N.J.S.A.* 2C:58–3(c). *See also N.J.S.A.* 2C:58–3(f) ("Any firearms purchaser identification card may be revoked by the Superior Court of the county wherein the card was issued, after hearing upon notice, upon a finding that the holder thereof no longer qualifies for the issuance of such permit."). Under *N.J.S.A.* 2C:58–3(c), those persons disqualified from obtaining (and therefore possessing) a firearms card generally included: (1) persons "convicted of a crime"; (2) "drug dependent person[s]," "habitual drunkard[s]," and those confined to an institution for a "mental disorder"; (3) persons suffering "from a physical defect or disease which would make it unsafe for [them] to handle firearms"; (4) persons under 18; (5) "any person where the issuance would not be in the interest of the public health, safety, or welfare"; or (6) "any person who is subject to a court order issued pursuant to [the

Prevention of Domestic Violence Act of 1991] ... prohibiting the person from possessing any firearm." *See L.* 1991, *c.* 261, § 19 (citation omitted).

Thus, at a hearing under the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3), if the Essex County Prosecutor's Office could show that plaintiff fell within any of the disability categories of *N.J.S.A.* 2C:58–3(c) or that he was "unfit" or that he "pose[d] a threat to the public," then a reason for forfeiture of plaintiff's weapons and the revocation of his card would be established.[11] If the Prosecutor's Office did not meet any of those standards for the forfeiture of a firearm or revocation of a firearms card, then at the conclusion of the hearing, pursuant to *N.J.S.A.* 2C:25–21(d)(3), a court would be required to

> order the return of the firearms, weapons and any authorization papers relating to the seized weapons to the owner *if* the *complaint* has been dismissed at the request of the complainant and the prosecutor determines that there is insufficient probable cause to indict; or if the defendant is found not guilty of the charges; or if the court determines that the domestic violence situation no longer exists. [*See L.* 1991, *c.* 261, § 5 (emphasis added).]

█ The term "complaint" in the statute clearly refers to a criminal, not a domestic violence, complaint. That is so because the statute uses words common to the criminal law, such as "insufficient probable cause to indict" and "if the defendant is found not guilty of the charges." [12] A domestic violence complaint is civil in nature. *Cesare v. Cesare,* 154 *N.J.* 394, 400, 713 *A.*2d 390 (1998). A well-grounded criminal charge, one with sufficient "probable cause to indict," is therefore an adequate basis to justify

---

[11] Significantly, in a 2004 clarifying amendment to *N.J.S.A.* 2C:25–21(d)(3), the Legislature made crystal clear that, at a domestic violence forfeiture hearing, the court must determine, before returning a seized firearm, whether the owner is "subject to any of the disabilities set forth in N.J.S.2C:58–3c." *L.* 2003, *c.* 277, § 1.

[12] Other support for that conclusion is the opening language of *N.J.S.A.* 2C:25–21(a), which provides that "the law enforcement officer shall arrest the person who is alleged to be the person who subjected the victim to domestic violence and shall sign a criminal *complaint* if. . . ." (Emphasis added).

the forfeiture of firearms. Here, however, the criminal charges lodged against plaintiff were dismissed four days after the Prosecutor's Office filed its forfeiture petition.

At a hearing, the court still could have ordered forfeiture of the weapons and firearms permit if it found that "the domestic violence situation" persisted. *N.J.S.A.* 2C:25–21(d)(3). Nonetheless, the record does not suggest that the "domestic violence situation" continued after the issuance of the mutual restraining orders, and plaintiff's final restraining order did not prohibit him from possessing a firearm (although the court had the discretion to include such a bar under *N.J.S.A.* 2C:25–29(b)(16)).

Because a hearing was never conducted, whether the Prosecutor's Office would have succeeded on its forfeiture petition is entirely a matter of speculation. Plaintiff's agreement to enter a consent judgment permitting him to sell his firearms or surrender title to the State did not contain an admission that he was subject to one of the forfeiture provisions of *N.J.S.A.* 2C:25–21(d)(3). As noted, the domestic violence restraining order issued against plaintiff was dissolved in 2000 after his ex-wife gave her consent.

Thus, in 2000, there does not appear to have been any legal impediment prohibiting plaintiff from obtaining a firearms permit and purchasing a weapon.[13]

## B.

■ We now turn to the heart of this case—whether the 2004 addition of *N.J.S.A.* 2C:58–3(c)(8) precludes plaintiff from obtain-

---

[13] Effective January 14, 2004, *N.J.S.A.* 2C:25–29(b) required that domestic violence restraining orders include a bar to the possession of a firearm. That statute provides;

> In addition to any other provisions, any restraining order issued by the court shall bar the defendant from purchasing, owning, possessing or controlling a firearm and from receiving or retaining a firearms purchaser identification card or permit to purchase a handgun pursuant to N.J.S. 2C:58–3 during the period in which the restraining order is in effect or two years whichever is greater ...

ing a firearms permit or possessing a firearm. *N.J.S.A.* 2C:58–3(c) provides: "No handgun purchase permit or firearms purchaser identification card shall be issued: ... (8) To any person whose firearm is seized pursuant to the 'Prevention of Domestic Violence Act of 1991,' and whose firearm has not been returned." (Citation omitted). We must determine whether plaintiff's firearms were not "returned" within the intendment of the statute, for if that is so, plaintiff is permanently barred from ever possessing a firearm. Thus, we begin with a discussion of what the Legislature intended by the words it chose in *N.J.S.A.* 2C:58–3(c)(8). *DiProspero v. Penn*, 183 *N.J.* 477, 492, 874 *A.2d* 1039 (2005) ("The Legislature's intent is the paramount goal when interpreting a statute....").

Typically, the best indicator of legislative intent is the statutory language. *Ibid.* Although our starting point is to "ascribe to the statutory words their ordinary meaning and significance," we recognize that sometimes a plain reading will lead to an absurd result that could not have been intended by the Legislature. *Id.* at 492–93, 874 *A.2d* 1039. For example, if *N.J.S.A.* 2C:58–3(c)(8) were to be read literally, a firearm seized as a result of a domestic violence complaint and not "returned" merely because the firearm was lost or misplaced by the police, or stolen while in police custody, would trigger the bar to the future issuance of a handgun purchase permit or firearms card. Clearly, following the strict statutory language to an illogical conclusion is not what the Legislature had in mind. *See Carpenter Tech. Corp. v. Admiral Ins. Co.*, 172 *N.J.* 504, 521, 800 *A.2d* 54 (2002) (noting that if plain language is unambiguous but "a literal interpretation would create a manifestly absurd result, contrary to public policy, the spirit of the law should control" (citation and internal quotation marks omitted)).

Under those circumstances, we ordinarily would turn to other indicators of the Legislature's probable intent, such as the statute's history as revealed by sponsors' or committee statements or committee debates on the subject. *DiProspero, supra*, 183 *N.J.*

at 492–93, 874 *A.*2d 1039. However, nothing in the legislative history of *N.J.S.A.* 2C:58–3(c)(8) sheds any light on how to interpret the words "whose firearm has not been returned."

Clearly, the Legislature did not intend to prohibit the issuance of a firearms card under *N.J.S.A.* 2C:58–3(c)(8) because a firearm was not returned due to sheer fortuity, *e.g.,* a fire destroying the area where weapons are impounded. A commonsense reading of the statute requires that *N.J.S.A.* 2C:58–3(c)(8)'s bar to the issuance of a firearms card be due to some fault of plaintiff. Therefore, in this case, at a forfeiture hearing in 1997, had plaintiff's firearms "not been returned" because plaintiff had been found guilty of a crime related to the domestic violence incident, because there was "probable cause to indict," or because the "domestic violence situation" continued after the issuance of the mutual restraining orders, *see N.J.S.A.* 2C:25–21(d)(3), then the conditions of *N.J.S.A.* 2C:58–3(c)(8) would have been met.

Additionally, in 1997, the Prosecutor's Office could have moved for the revocation of plaintiff's firearms card or revoked his right to possess a handgun for any of the reasons then specified in *N.J.S.A.* 2C:58–3(c), such as a physical illness making it unsafe for him to handle a firearm or on grounds related to the interest of the public health, safety, or welfare.

■ Only when a person's firearm is seized pursuant to the Prevention of Domestic Violence Act of 1991 and "has not been returned" for a reason articulated in the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3), is that person permanently barred from obtaining a firearms card. That is the only sensible interpretation of *N.J.S.A.* 2C:58–3(c)(8) and the only interpretation that is fully consistent with what the Legislature must have intended. Therefore, under *N.J.S.A.* 2C:58–3(c)(8), the reason for not returning a firearm could be established by proving any ground in support of a forfeiture at a proceeding conducted pursuant to *N.J.S.A.* 2C:25–21(d)(3) or by an admission made by a

plaintiff in a consent judgment.[14]

## C.

Therefore, we conclude that under *N.J.S.A.* 2C:58–3(c)(8), the Prosecutor's Office can only continue to withhold plaintiff's firearms card if it can show that it would have succeeded had a forfeiture hearing been conducted in 1997. In other words, if the Prosecutor's Office can prove plaintiff's firearms would have been forfeited and therefore not "returned," then plaintiff cannot compel the Millburn Township Police Department to convey to him a firearms card that it is forbidden from issuing pursuant to *N.J.S.A.* 2C:58–3(c)(8). In the circumstances of this case, we cannot conclude that the consent judgment—without a stipulation by plaintiff that his firearms were subject to forfeiture—constitutes an admission that the Prosecutor's Office had a reason grounded in the Domestic Violence Forfeiture Statute, *N.J.S.A.* 2C:25–21(d)(3), for not returning his weapons.

We therefore remand this matter to the Law Division to conduct a hearing, if requested by the Prosecutor's Office, within thirty days to determine whether the Prosecutor's Office would have succeeded at the *N.J.S.A.* 2C:25–21(d)(3) forfeiture proceeding. If the Prosecutor's Office forgoes the hearing or is unsuccessful at that hearing, plaintiff will be entitled to the return of his firearms card. Nothing in this opinion prevents the Prosecutor's Office, today, from moving to revoke plaintiff's license if there is cause to do so under any of the disability provisions of *N.J.S.A.* 2C:58–3(c). Nor is the Millburn Township Police Department

---

[14] Although we disagree with the Appellate Division's literal interpretation of the language of *N.J.S.A.* 2C:58–3(c)(8), we do agree that *N.J.S.A.* 2C:58–3(c)(8), as a regulatory provision, is the law governing this case. *See In re Preis,* 118 *N.J.* 564, 568, 573 A.2d 148 (1990) ("We have repeatedly referred to New Jersey's gun-control laws as a 'careful grid' of regulatory provisions." (citation omitted)). Accordingly, all persons seeking the issuance of a firearms permit must be in compliance with that statute as of the date of its enactment, January 14, 2004.

obliged to issue any new firearms permit to plaintiff if he is disqualified under any provision of *N.J.S.A.* 2C:58–3(c).

Last, we note that plaintiff surrendered title to his five handguns seized in 1997. Plaintiff cannot acquire a handgun in this State unless he first is issued a permit to purchase a handgun pursuant to *N.J.S.A.* 2C:58–3(a). Thus, he could not reacquire those weapons unless he is issued a separate permit to purchase each of the handguns. *N.J.A.C.* 13:54–1.9(a) ("Only one handgun may be purchased or delivered on each permit to purchase."). The firearms purchaser identification card is only good for acquiring an antique cannon, a rifle, or a shotgun. *N.J.S.A.* 2C:58–3(b). Thus, even if plaintiff's firearms card were to be returned to him, he cannot use that card to acquire a handgun.

### III.

Accordingly, we reverse the Appellate Division and remand to the Law Division for proceedings consistent with this opinion.

*For reversal and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, WALLACE, RIVERA–SOTO and HOENS—6.

*Opposed*—None.