**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0042-24

MICHAEL A. MORONEY,

    Plaintiff-Respondent,

v.

WILLIAM SANDELANDS, ESQ.,
and CARA FIALKOFF, ESQ., a/k/a
CARA MURPHY,

    Defendants,

and

ALINA HABBA, ESQ., a/k/a
ALINA EYET and SANDELANDS
EYET, LLP,

    Defendants-Appellants.

_____

Submitted September 24, 2025 – Decided March 31, 2026

Before Judges Gummer, Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Somerset County, Docket No. L-0186-24.

Madaio Eyet & Associates LLP, attorneys for appellants (Michael T. Madaio, on the briefs).

Flynn Legal Group, LLC, attorneys for respondent (Michael A. Moroney and Catherine J. Flynn, on the brief).

PER CURIAM

Defendants, Alina Habba, Esq. and Sandelands Eyet LLP, appeal from a trial court order dismissing their Order to Show Cause (OTSC) filed under the Uniform Public Expression Protection Act (UPEPA), N.J.S.A. 2A:53A-49 to -61. Because we conclude the trial court misapplied the UPEPA and applicable common law, we reverse and remand for further proceedings.

In February 2024, plaintiff, Michael A. Moroney, Esq., through counsel, filed a complaint against defendants Habba, Sandelands Eyet, William Sandelands, Esq., and Cara Fialkoff, Esq.[1] Plaintiff alleged that after nearly thirty years of marriage, he and Barbara Kelly agreed they "would file for an uncontested divorce without cause." On February 8, 2018, plaintiff's attorney filed a "no fault" complaint for divorce, alleging irreconcilable differences.

---

[1] Sandelands passed away in October 2022. Plaintiff's claims against Fialkoff were dismissed with prejudice.

Plaintiff contended that "[a]t th[e] time . . . Kelly was employed as a paralegal at the Sandelands Eyet, LLP [l]aw [f]irm" and Habba, Sandelands, and Fialkoff practiced law at the firm. He alleged "[u]pon information and belief," that four days after filing the complaint, "Kelly was advised by [d]efendants to file a domestic violence complaint against [him] in order to use the threat of incarceration and loss of his professional license as leverage in the" matrimonial matter.

Plaintiff contended Kelly had "filed a domestic violence complaint and request[ed] . . . a temporary restraining order [(TRO)] against" him under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. He claimed that thereafter, "[d]efendants prepared a revised complaint asserting different and inconsistent allegations of domestic violence . . . and filed it on behalf of . . . Kelly." Plaintiff denied that "any acts constituting domestic violence ever occurred" and asserted Kelly had not "previously reported or filed a complaint of domestic violence . . . nor sought a restraining order against" him.

Plaintiff alleged that "[c]ontemporaneous with the filing of the domestic violence complaints, [d]efendants filed a motion" in the pending matrimonial matter seeking "permanent monthly spousal support for . . . Kelly in the amount of $12,546[] per month." Plaintiff noted defendants claimed the amount was "a

3

reasonable demand"; however, he asserted his monthly "take-home pay was $10,400 per month." Plaintiff contended that "[s]imultaneously with filing the motion for spousal support[, d]efendants offered to dismiss both domestic violence complaints . . . in exchange for [his] conceding to the motion for permanent spousal support and agreeing to pay" Kelly the $12,546 in monthly spousal support.

Plaintiff alleged defendants continued their "efforts . . . to coerce a settlement of the spousal support motion using the domestic violence complaints as leverage" up to the first day of the domestic violence trial. These efforts included "a 'final offer' to dismiss the domestic violence complaints against [p]laintiff in exchange for [p]laintiff['s] agree[ment] to [pay Kelly] permanent monthly support in the amount of $9,000."

After the first day of trial, the matter was adjourned for approximately three weeks. Plaintiff contended that during the interim, "[d]efendants made several offers to dismiss the domestic violence complaints in exchange for a settlement of the spousal support motion culminating in [d]efendants making a second 'final offer' to dismiss the domestic violence complaints if [he] would agree to permanent monthly spousal support in the amount of $6,000." Plaintiff

4

stated he "rejected all offers to dismiss the domestic violence complaints in exchange for agreeing to the improper demands."

Plaintiff alleged Sandelands was lead counsel for Kelly during the domestic violence trial. Further, Habba and Fialkoff acted as co-counsel, sat at counsel table, and assisted during trial. Plaintiff contended the trial court in the domestic violence case had "found both complaints unsupported by any evidence," denied entry of a final restraining order, and dismissed the TRO.

Plaintiff contended that "[a]fter the domestic violence complaints were dismissed and the matrimonial action concluded . . . Kelly, with the advice of the [d]efendants, agreed to . . . monthly spousal support in the amount of $750 per month for the first [twelve] months, and increasing thereafter to a total of $2,650 per month until [he] reache[d] retirement age."

Plaintiff's complaint contained three counts. The counts included allegations of malicious prosecution; statutory and administrative violations under N.J.S.A. 2A:47A-1[2] and New Jersey Rule of Professional Conduct (RPC)

---

[2] Any person who falsely and maliciously and without probable cause makes a complaint, orally or in writing, of unprofessional conduct against a member of any profession requiring a license or other authority to practice such profession, to any court . . . authorized to and having the right to hear such complaint and to act

A-0042-24

3.4(g) ("A lawyer shall not: . . . present, participate in presenting, or threaten to present criminal charges to obtain an improper advantage in a civil matter"); and entitlement to punitive damages based on the other two counts.

In the malicious prosecution count, plaintiff alleged defendants "were negligent, acted with malice, and aided and abetted":

> [I]n advising . . . Kelly to file a domestic violence complaint . . . without probable cause or other justifiable reason in order to coerce an agreement on spousal support under the threats of incarceration and loss of [his] professional license[;]
>
> . . . Kelly in preparing and filing a revised domestic violence complaint . . . without probable cause or other justifiable reason in order to coerce an agreement on spousal support under the threats of incarceration and loss of [his] professional license[;]
>
> . . . [B]y filing a motion in the contemporaneously pending matrimonial matter seeking to compel [him] to pay monthly spousal support in an amount in excess of the entirety of his monthly take home pay[;]

---

> thereon or to recommend action thereon and to take or recommend the taking of disciplinary action against the person complained of, such as disbarment or suspension in the case of an attorney-at-law . . . shall be liable for any and all damages suffered and sustained by the member of a profession so complained of, to be recovered in a civil action in the nature of an action at law for malicious prosecution. In any such action, exemplary or punitive damages may be awarded.

6

. . . [B]y presenting and assisting in presenting domestic violence charges, including at the time of the domestic violence trial . . . , in an attempt to obtain an improper advantage in the contemporaneously pending [matrimonial] matter and coerce [him] into capitulating to an award of spousal support in excess of the entirety of his monthly take[-]home pay[;]

. . . [B]y violat[ing] the [RPCs] by presenting and assisting in presenting criminal charges against Plaintiff in an attempt to obtain an improper advantage and coerce a party to agree to a settlement in the contemporaneously pending civil matter[;]

. . . [A]ttempting to trade a dismissal of the domestic violence complaints in exchange for [his] not opposing the motion filed by [d]efendants in the contemporaneously pending [matrimonial] matter[;]

. . . [B]y inducing and assisting . . . Kelly to testify falsely and otherwise by participating in the domestic violence trial[.]

In addition, as to malicious prosecution, plaintiff alleged defendants violated RPC 3.4(b) "by inducing and assisting . . . Kelly to testify falsely in the domestic violence trial" and RPC 3.4(g) "by presenting and assisting in presenting criminal charges against [him] in an attempt to obtain an improper advantage and coerce [him] to agree to a settlement in the contemporaneously pending [matrimonial] matter." Further, plaintiff alleged defendants' actions "were wrongful, malicious and designed to embarrass, harass[,] and damage

7

[him], and to punish [him] for having filed a [c]omplaint for [d]ivorce against their employee . . . Kelly."

In lieu of filing an answer to the complaint, defendants filed the OTSC under the UPEPA. Plaintiff voluntarily dismissed his complaint without prejudice. Nevertheless, defendants pursued the OTSC, seeking a declaration that the UPEPA was applicable and that plaintiff had failed to establish a prima facie case, a stay of plaintiff's case pending resolution of the OTSC, and reasonable attorneys' fees and costs.

Kelly provided a certification in support of defendants' application. She contended plaintiff repeatedly had subjected her to domestic abuse, including multiple incidents of "physical violence, mental and emotional abuse, and coercive and threatening behavior." She stated in February 2018, she was in "fear[] for [her] life." Therefore, she consulted with defendants, her attorneys, regarding her situation and of her "own volition," filed the domestic violence complaint and sought a TRO. She claimed she had sought a restraining order for protection and because she "truly believed" she was in imminent danger. She asserted the TRO was not related to the matrimonial matter nor used to gain "leverage" against plaintiff.

8

In an opposing affidavit, plaintiff reiterated many of the allegations contained in his complaint. He added: (1) in the days between the filing of the matrimonial matter and the entry of a TRO, "Kelly contacted [him] to advise that after consultation with her friends from work they 'were going to take [him] to the cleaners and then have [him] disbarred' and contest [his] bankruptcy reorganization application"; (2) "a true and accurate copy of" the police investigation report from Kelly's appearance to obtain the TRO; (3) "Fialkoff appeared personally at the . . . [m]unicipal [c]ourt and filed a second, revised domestic violence complaint and request for a [TRO] against [p]laintiff" and attached "a true and accurate copy of . . . [the s]upplementary [i]nvestigation [r]eport"; (4) his counsel was "contacted by . . . Habba who sought to convene a meeting to discuss a resolution of the pending domestic violence complaints and spousal support obligations" and attached "true and accurate copy of emails exchanged between" counsel; (5) a meeting between Habba, Fialkoff and plaintiff's counsel took place where Habba "advis[ed] that . . . Kelly was willing to dismiss the domestic violence [matter] . . . if [p]laintiff would agree to $10,000 per month in 'permanent' spousal support"; and Habba and Fialkoff threatened "that if he did not agree to their demand for spousal support they would pursue the quasi-criminal charges seeking to have him incarcerated and

9

disbarred . . . , would file a spousal support motion seeking the entirety of [p]laintiff's monthly income . . . , and would file [o]bjections to his" bankruptcy petition; (6) after the meeting, he was advised by his counsel that Habba had contacted counsel and "reiterate[d] the offer" made during the meeting; (7) defendants filed a motion in the matrimonial matter and "sought permanent monthly spousal support for . . . Kelly in the amount of $2,590 per week ($10,878 per month), in addition to requiring [him] to maintain all health and life insurances (approximately $1,800 per month)" and attached "a true and accurate copy of the Notice of Motion for Pendente Lite Relief"; (8) "true and accurate copies of [p]laintiff's pay stubs" that purported to establish his "monthly take-home pay was $10,805.40 per month"; (9) after filing the motion, "[d]efendants offered to dismiss both domestic violence complaints and the TRO against [him] in exchange for [his] not contesting the motion for permanent spousal support and agreeing to pay the demands"; and (10) in the time between the domestic violence hearings, "[d]efendants continued making offers to dismiss the domestic violence complaints in exchange for a settlement of the spousal support motion, including . . . offer[s]" of $7,500 per month and "a second 'final offer' . . . of $6,000," and plaintiff included "a true and accurate copy of emails exchanged between" him and his counsel.

A-0042-24

After hearing the parties' arguments, the trial court found the facts asserted by plaintiff were undisputed. The court

> note[d] . . . [d]efendant[s'] briefs/submissions and argument made during the oral argument d[id] not dispute the factual allegations – rather the argument was made that the actions/conduct by the lawyers were in their efforts to litigate the domestic violence complaints on behalf of . . . Kelly as well as in their efforts at representing her during the divorce. There is no specific denial of the allegations set forth by [p]laintiff regarding the amounts sought for spousal support, nor the negotiation techniques employed by [d]efendants i.e. dismissal of the [domestic violence] action if plaintiff accepted the proposed spousal support demand.

The trial court construed plaintiff's cause of action as one seeking "redress for acts alleged to have been committed by [d]efendants during the divorce litigation proceedings between plaintiff and his ex-wife." The court found:

> The [c]omplaint at i[t]s very basic core – [wa]s . . . filed against the law firm and the attorneys who previously represented his ex-wife in the divorce proceedings for their actions during that litigation, namely filing a revised [domestic violence] complaint asserting different and inconsistent claims, which plaintiff denies, and which were found to be wholly unfounded by the trial judge - for the purpose of extracting an increased permanent spousal support payment in exchange for dismissal of the [domestic violence] complaint.

11

The trial court first considered whether the UPEPA applied. Reviewing N.J.S.A. 2A:53A-50, the court concluded:

> The cause of action [wa]s not based on "communications" during the trial of the domestic violence complaints; nor are they based on the [defend]ants[1] "communications" on an issue under consideration or review during the trial of the domestic violence complaints; nor are they based on the [defend]ants[1] exercise of freedom of speech on a matter of public concern.

The trial court determined the matter arose "from a divorce proceeding which [wa]s a private concern between plaintiff and his ex-wife."

Second, the trial court considered whether plaintiff had "establish[ed] a prima facie case as to each essential element of any cause of action in the complaint" under N.J.S.A. 2A:53A-55(a)(3)(a). The trial court noted plaintiff's complaint included a claim for malicious prosecution. Further, it recognized an element of a claim for malicious prosecution requires that "a criminal action was instituted by" one party against another. The court stated that "[i]n New Jersey, a domestic violence proceeding is considered 'quasi criminal' as the acts that constitute domestic violence are criminal in nature." Therefore, the court concluded plaintiff's pleading "sufficiently" satisfied the statute. The trial court dismissed defendants' OTSC and denied their request for counsel fees and costs.

A-0042-24

On appeal, defendants contend the trial court erred because plaintiff's complaint concerning their conduct fits within all three categories of protected activities under N.J.S.A. 2A:53A-50(b)(1)(2)(3). Defendants assert plaintiff's claims are "indisputably based on their communications in connection with a judicial proceeding and/or an issue under consideration or review in a judicial proceeding," citing N.J.S.A. 2A:53A-50(b)(1) and (2).

Moreover, defendants contend plaintiff's complaint arises from their exercise of the right to petition on a matter of public concern, citing N.J.S.A. 2A:53A-50(b)(3). Defendants assert their right to petition is implicated because plaintiff "has sought to hold [them] liable for filing a domestic violence complaint against him"; "engaging in settlement discussions"; and "filing a motion." In addition, defendants contend "two matters of public concern are implicated: domestic violence and attorney misconduct." As to the issue of domestic violence, defendants note the Legislature's and the Supreme Court's recognition of the importance of domestic violence and assert that their "efforts to assist . . . Kelly in obtaining protection from her domestic abuser relate to an issue of substantial public concern." Also, defendants contend plaintiff's "attempt to punish [defendant]s for filing a complaint based on his unethical conduct" implicates "[a] significant public concern."

13

In addition, defendants assert plaintiff's complaint should have been dismissed with prejudice because plaintiff "failed to state a cause of action upon which relief can be granted." N.J.S.A. 2A:53A-55(a)(3)(b)(i). Defendants contend plaintiff's malicious prosecution claim fails because it does not allege a criminal prosecution.

"In construing the meaning of a statute or the common law, our review is de novo." Nicholas v. Mynster, 213 N.J. 463, 478 (2013). To interpret a statute, we "determine and give effect to the Legislature's intent." In re H.D., 241 N.J. 412, 418 (2020) (quoting N.J. Dep't of Child. & Fams., Div. of Youth & Fam. Servs. v. A.L., 213 N.J. 1, 20 (2013)). "[W]e begin by looking at the statute's plain language," Murray v. Plainfield Rescue Squad, 210 N.J. 581, 592 (2012), and give the language "its ordinary meaning and . . . construe[ it] in a common-sense manner." State in the Interest of K.O., 217 N.J. 83, 91 (2014). "A 'common-sense approach often begins with an examination of dictionary definitions.'" State v. Brown, 463 N.J. Super. 33, 49 (App. Div. 2020) (quoting Cypress Point Condo. Ass'n v. Adria Towers, LLC, 226 N.J. 403, 426 (2016)). "We will 'neither rewrite a plainly[] written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.'" Sanchez v. Fitness Factory Edgewater, LLC, 242

N.J. 252, 261 (2020) (alteration in original) (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).

The Legislature requires that the UPEPA "be broadly construed and applied to protect the exercise of the right of freedom of speech . . . [and] the right to . . . petition . . . guaranteed by the United States Constitution or the New Jersey Constitution."  N.J.S.A. 2A:53A-59.

"Pursuant to [the] UPEPA, a party served with a 'pleading that asserts a cause of action to which [the] [UPEPA] applies . . . may file an application for an [OTSC] . . . to dismiss the cause of action.'"  Wunsch v. CTE Republicans for Englewood Cliffs, ___ N.J. Super. ___, ___ (App. Div. 2026) (slip op. at 13) (third alteration and omissions in original) (quoting N.J.S.A. 2A:53A-51).  The

UPEPA applies to:

a cause of action asserted in a civil action against a person based on the person's:

(1) communication in a legislative, executive, judicial, administrative, or other governmental proceeding;

(2) communication on an issue under consideration or review in a legislative, executive, judicial, administrative, or other governmental proceeding; or

(3) exercise of the right of freedom of speech or of the press, the right to assembly or petition, or the

15

right of association, guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern.

[Id. at 13-14 (quoting N.J.S.A. 2A:53A-50(b)).]

The "causes of action" excepted from the UPEPA are inapplicable to the matter on appeal. See N.J.S.A. 2A:53A-50(c) "'N.J.S.A. 2A:53A-55(a) sets forth the grounds on which the party filing the [OTSC] [application] can prevail,' thereby obtaining a dismissal of the case." Wunsch, slip op. at 14 (second alteration in original) (quoting Satz v. Starr, 482 N.J. Super. 55, 64 (App. Div. 2025)).

N.J.S.A. 2A:53A-55(a) provides:

a.   In ruling on an order to show cause under [N.J.S.A. 2A:53A-51], the court shall dismiss with prejudice a cause of action, or part of a cause of action, if:

(1) the moving party established under [N.J.S.A. 2A:53A-50(b)] that this act applies;

(2) the responding party fails to establish under [N.J.S.A. 2A:53A-50(c)] that this act does not apply; and

(3) either:

(a) the responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint; or

(b) the moving party establishes that:

16

(i) the responding party failed to state a cause of action upon which relief can be granted; or

(ii) there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the cause of action or part of the cause of action.

[Ibid. (alterations in original) (emphasis added) (quoting N.J.S.A. 2A:53A-55(a)).]

"In deciding an [OTSC] application brought under N.J.S.A. 2A:53A-51, 'the court may consider the pleadings, the [OTSC] application and supporting certifications, briefs, any reply or response to the [OTSC], and any evidence that could be considered in ruling on a motion for summary judgment.'" Id. at 15 (quoting N.J.S.A. 2A:53A-54).

We begin our analysis by considering whether plaintiff's allegations implicate defendants' rights to communicate on issues "in a . . . judicial . . . proceeding" or "on an issue under consideration or review in a . . . judicial . . . proceeding" or in their "exercise of the right of freedom of speech . . . [or] the right to . . . petition . . . guaranteed by the United States Constitution or the New Jersey Constitution, on a matter of public concern." N.J.S.A. 2A:53A-50(b); see N.J.S.A. 2A:53A-55(a)(1); see also Satz, 482 N.J. Super. at 66 ("The UPEPA requires a judge first decide whether plaintiff's lawsuit against defendants was

17

based on" defendant's exercise of rights' enumerated in N.J.S.A. 2A:53A-50(b)(3)).

A plain and common sense reading of N.J.S.A. 2A:53A-50(b) provides a moving party needs to establish only one of its subsections, (1)-(3). Indeed, the "ordinary use [of the word 'or'] is almost always disjunctive, that is, the words it connects are to 'be given separate meanings.'" N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 513 (App. Div. 2015) (quoting United States v. Woods, 571 U.S. 31, 47 (2013)). Further, reading the section in the disjunctive allows for broad application, a stated legislative goal.

To "communicate" means "to convey knowledge of or information about," Merriam-Webster's Collegiate Dictionary 251 (11th ed. 2020), and a "communication" is "[t]he interchange of messages or ideas by speech, writing, gestures, or conduct; the process of bringing an idea to another's perception," Black's Law Dictionary 350 (12th ed. 2024). To "petition" means "[a] formal written request presented to a court or other official body." Id. at 1382.

Plaintiff asserts that the court "correctly assess[ed] that [his] cause of action was not based on communications involved in the trial of the domestic violence complaints nor were they based on communications on an issue under consideration or review during the trial of the domestic violence complaints."

18

However, this assertion is belied by the reading of his complaint and affidavit offered in opposition to defendants' OTSC.

Indeed, plaintiff's allegations concern defendants' advice to Kelly to file the domestic violence matter; preparation and filing of an amended domestic violence complaint; and presentation and assistance to Kelly in the domestic violence matter, including trial. These complaints implicate at least some of defendants' conduct under N.J.S.A. 2A:53A-50(b)(1) or (2). Thus, the UPEPA applies, and the trial court erred in finding it did not apply.

Given our conclusion that the UPEPA applies to plaintiff's complaint under N.J.S.A. 2A:53A-50(b)(1) or (2), we do not address defendants' alternative argument under N.J.S.A. 2A:53A-50(b)(3).

We next consider whether plaintiff "demonstrated that there [wa]s a prima facie case for each element of the claims under review." See N.J.S.A. 2A:53A-55(a)(3)(a) ("[T]he responding party fails to establish a prima facie case as to each essential element of any cause of action in the complaint."). Plaintiff's complaint alleged two substantive causes of action: (1) malicious prosecution and (2) statutory and administrative violations.

"Malicious prosecution requires the plaintiff to prove four elements: (1) a criminal action was instituted by this defendant against this plaintiff; (2) the

19

action was motivated by malice; (3) there was an absence of probable cause to prosecute; and (4) the action was terminated favorably to the plaintiff." LoBiondo v. Schwartz, 199 N.J. 62, 90 (2009).

"A domestic violence complaint is civil in nature." M.S. v. Millburn Police Dep't, 197 N.J. 236, 248 (2008). "Although committing one of the predicate acts may also expose the offender to criminal prosecution . . . the [PDVA] did not create a new class of criminal offenses." J.D. v. M.D.F., 207 N.J. 458, 474 (2011); see also N.J.S.A. 2C:25-19; N.J.S.A. 2C:25-28 to -29. Therefore, we conclude the trial court erred in finding that a domestic violence proceeding could satisfy the "criminal action" element for malicious prosecution and in finding on that basis that plaintiff had stated a cause of action for malicious prosecution.

However, aside from the incorrect application of malicious prosecution, the trial court's error raises other concerns. First, we are concerned that the court's ruling foreclosed its consideration of plaintiff's allegations that were labeled malicious prosecution but may have asserted other causes of action. "[D]etermination[s] of . . . a plaintiff's cause of action cannot be driven by the label a party affixes to its pleading; it is the obligation of the judiciary to transcend superficialities and reach the substance of what is alleged and sought."

20

Wood v. N.J. Mfrs. Ins. Co., 206 N.J. 562, 576 (2011); see also Couri v. Gardner, 173 N.J. 328, 340 (2002) (stating that in the context of N.J.S.A. 2A:53A-27, "[i]t is not the label placed on the action that is pivotal").

Therefore, without opining on the existence or merits of other causes of action alleged under the umbrella of malicious prosecution, we include in our remand the requirement that the trial court conduct a complete review under N.J.S.A. 2A:53A-55(a)(3). We add that the review must consider plaintiff did not file a complaint against Kelly. Instead, plaintiff limited his claims to Kelly's lawyers. Under this circumstance, the trial court must include in its analysis the viability of plaintiff's—a non-client's—causes of action against Kelly's lawyers. See LoBiondo, 199 N.J. at 100 ("We have traditionally been reluctant to permit a nonclient to sue an adversary's attorney, and with good reason.").

Second, to support plaintiff's allegation that defendants committed statutory and administrative violations, he relied on N.J.S.A. 2A:47A-1 and the RPCs. He similarly relied on the alleged violations to support an award for punitive damages. Perhaps because the trial court ended its analysis on the malicious prosecution, "quasi-criminal" basis, it did not address these allegations or damages. Therefore, our remand requires the trial court to

21

consider and address each of the asserted causes of action under N.J.S.A. 2A:53A-55(a)(3).

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

*M.C. Harley*

Clerk of the Appellate Division

A-0042-24