NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-0072-14T2

STATE OF NEW JERSEY IN THE
INTEREST OF C.L.H.'S WEAPONS

APPROVED FOR PUBLICATION

November 18, 2015

APPELLATE DIVISION

Submitted September 16, 2015 — Decided November 18, 2015

Before Judges Sabatino, Accurso and
O'Connor.

On appeal from Superior Court of New Jersey,
Chancery Division, Family Part, Cumberland
County, Docket No. FO-06-254-13.

Jennifer Webb-McRae, Cumberland County
Prosecutor, attorney for appellant State of
New Jersey (Jason H. Chessman, Assistant
Prosecutor, of counsel and on the brief).

Evan F. Nappen, attorney for respondent
C.L.H. (Jeffrey A. Skiendziul, on the
brief).

The opinion of the court was delivered by

ACCURSO, J.A.D.

The State appeals from a final order of the Family Part denying its motion to have C.L.H. forfeit five illegal assault firearms, seventy-one other firearms and his firearms purchaser identification card seized pursuant to the Prevention of Domestic Violence Act of 1991, N.J.S.A. 2C:25-17 to -35. Because we conclude the court erred in determining the 2013 gun

amnesty law, L. 2013, c. 117, applied here and section 3c(8) of the Gun Control Law, N.J.S.A. 2C:58-3c(8), did not, we reverse.

Based on the parties' stipulations and the testimony at the forfeiture hearing, the judge found that a temporary restraining order (TRO) had been entered against C.L.H.'s wife in April 2013 arising out of a domestic violence complaint brought by her eighty-one-year-old father. Because the victim noted the existence of two to five long guns and a .22 caliber revolver located in the house and shed at his daughter's home, the TRO included a warrant directing law enforcement to search for and seize those weapons. Although C.L.H. had nothing whatsoever to do with the incident or the TRO, because he lived with his wife at the address specified in the warrant, Cumberland County sheriff's officers were authorized to enter their marital residence with the warrant and seize weapons belonging to C.L.H. for safekeeping pursuant to the Prevention of Domestic Violence Act. See N.J.S.A. 2C:25-28j; State v. Harris, 211 N.J. 566, 580 (2012).

C.L.H. cooperated with the officers executing the warrant, advising that there were weapons in the home in locked gun safes. The sheriff's officers removed four bows, one machete, four handguns and seventy-two long guns from C.L.H. and his wife's home. C.L.H. also voluntarily turned over his firearms

purchaser identification card.[1] The officers did not find magazines for any of the guns.

The Cumberland County Prosecutor's Office sent eight of the guns seized to the State Police for testing and filed a timely petition for forfeiture in May. A detective in the ballistics unit testified that five of those guns, all of which were operable, qualified as assault firearms under N.J.S.A. 2C:39-1w(1), (2) or (4), as an enumerated weapon, one substantially

---

[1] It would not appear that the officers could have lawfully seized C.L.H.'s firearms purchaser identification card, as opposed to his weapons, under the domestic violence warrant as C.L.H. was not the defendant in the domestic violence complaint. See N.J.S.A. 2C:25-28j, which provides in pertinent part:

> Emergency relief may include forbidding the defendant from returning to the scene of the domestic violence, forbidding the defendant from possessing any firearm or other weapon enumerated in subsection r. of N.J.S. 2C:39-1, ordering the search for and seizure of any such weapon at any location where the judge has reasonable cause to believe the weapon is located and the seizure of any firearms purchaser identification card or permit to purchase a handgun issued to the defendant and any other appropriate relief.
>
> [(Emphasis added).]

This distinction is reflected in the phrasing of the warrant included in the standard New Jersey Domestic Violence Court Order. Domestic Violence Procedures Manual (Oct. 9, 2008), http://www.judiciary.state.nj.us/family/dvprcman.pdf. It is also consistent with another portion of the statute governing the conduct of police officers responding to a scene of domestic violence. See N.J.S.A. 2C:25-21d(1)(b).

A-0072-14T2

identical to an enumerated weapon or a semi-automatic rifle with a fixed magazine capacity exceeding fifteen rounds.

The court accepted the detective's testimony as credible in all respects, and found the five guns are assault firearms, illegal to own or possess under New Jersey law. Although C.L.H. testified that he did not have paperwork for any of the five assault firearms due to a "vindictive ex-wife" who destroyed his records "about" fifteen years ago, the detective testified that one of the enumerated weapons,[2] the A[vtomat] K[alashnikov]-47 type semi-automatic firearm, was imported in 2003. The court noted that the import date for that weapon, eleven years prior to the forfeiture hearing, "would be less than 15 years ago."

Based on the parties' stipulations, the judge found that C.L.H. had no criminal history and no juvenile record. He was not a defendant in the domestic violence proceeding, which was later voluntarily dismissed in any event. The prosecutor did

---

[2] The other enumerated weapons were an Uzi type semi-automatic firearm and an FN-FAL type semi-automatic firearm. The detective testified he found C.L.H.'s .223 caliber Bushmaster semi-automatic carbine substantially identical to the Bushmaster Assault Rifle under N.J.S.A. 2C:39-1w(2), because it had a flash suppressor, a bayonet lug, a pistol grip and a telescoping stock. The remaining weapon, the Winchester .22 long rifle caliber, semi-automatic carbine, the detective deemed an assault firearm under N.J.S.A. 2C:39-1w(4), because it had a fixed tubular magazine on the underside of the barrel with a capacity of fifteen plus one rounds.

not file any charges arising out of the domestic violence incident, or file charges against C.L.H. arising from his illegal possession of the five assault firearms. The State stipulated that it was not aware of any drug or alcohol problems C.L.H. might have suffered or any record of involuntary commitments.

The parties stipulated that C.L.H. had been a life-long collector of the types of guns seized from his home. They also stipulated that the Cumberland County Prosecutor's Office and the Cumberland County Sheriff's Office conducted eleven separate "Gun Buy Backs" from June 1997 through June 2010. The court noted that "[a]ssuming that C.L.H. possessed the five . . . illegal weapons during any of the times listed, he could have turned in the weapons at any one of the 'buy backs,' perhaps for money and with 'no questions asked.'"

Finally, the parties stipulated that C.L.H.'s counsel sent a letter to the assistant prosecutor in December 2013 stating that C.L.H. "hereby transfers to a license[d] firearms dealer (whose name will be provided at a future date) . . . under P.L. 2013, Ch.117/A.3796, effective August 8, 2013," the five assault firearms seized by the sheriff's officers in April 2013, citing

N.J.S.A. 2C:25-21d(3)(b).[3]  That subsection of the statute allows an owner whose firearms are not to be returned following the hearing required under N.J.S.A. 2C:25-21d(3) to arrange for their sale to a registered dealer within sixty days of the order of forfeiture in order to avoid the weapons being disposed of by the prosecutor.

The court found on the basis of the stipulations, C.L.H.'s testimony and that of two friends who testified on his behalf that there was "simply no basis to find that C.L.H. is a danger to the community's health, safety, welfare or any other way." Although not saying so directly, the court impliedly rejected the prosecutor's contention that C.L.H. should be disqualified under N.J.S.A. 2C:58-3c(5) (disqualification in the interest of the public health, safety or welfare), based on his knowing possession of an assault firearm in disregard of the State's gun ownership laws.

The court also rejected the prosecutor's contention that because C.L.H.'s weapons were seized pursuant to the Prevention of Domestic Violence Act, and cannot be returned because they are illegal firearms under N.J.S.A. 2C:39-1w, the Domestic

---

[3] Counsel's letter referred to N.J.S.A. 2C:25-21d(3)(a) which refers to weapons other than firearms and is thus inapplicable. We assume he meant to refer to subsection d(3)(b) of the statute.

Violence Forfeiture Statute, N.J.S.A. 2C:25-21d(3), disqualified C.L.H. from obtaining a firearms purchaser identification card under N.J.S.A. 2C:58-3c(8), or legally possessing the remaining seventy-one firearms seized from his and his wife's home. Acknowledging that "[a] strict interpretation of the law" would lead to precisely that result, the court deemed it "not equitable" here.

The court instead allowed C.L.H. to take advantage of the 2013 gun amnesty law based on his counsel's letter to the assistant prosecutor sent during the 180 days of the amnesty law's operation. The court rejected the prosecutor's argument that the amnesty law did not apply because the assault firearms were not in C.L.H.'s possession as of the law's August 8, 2013 effective date, having been seized from his and his wife's home by Cumberland County sheriff's officers some four months earlier. Reasoning that N.J.S.A. 2C:58-3c(8)'s bar must "be due to some fault of the person whose guns were seized," see M.S. v. Millburn Police Dep't, 197 N.J. 236, 251 (2008), the court found "there is no 'fault' or other inappropriate, unlawful or bad behavior of C.L.H., the guns were seized solely because of a restraining order issued against a person he resided with, his wife."

A-0072-14T2

The court noted that "C.L.H. could have surrendered those guns but for the fact that they were held by the Cumberland County Prosecutor's [O]ffice due to no reason other than the fortuitous circumstance of misfortunes that occurred to C.L.H.'s wife." The court concluded that "to hold under these circumstances that the guns in question were not in C.L.H.'s possession so that he could not take advantage of the August 8, 2013 [gun amnesty] law allowing for a voluntary surrender of the same is simply not equitable." The court granted the State's application for stay pending appeal.

The State argues on appeal that the 2013 gun amnesty law does not apply here, and because C.L.H.'s weapons were not returned for a reason set forth in the Domestic Violence Forfeiture Statute, N.J.S.A. 2C:25-21d(3), the weapons and C.L.H.'s firearms purchaser identification card cannot be returned to him under N.J.S.A. 2C:58-3c(8). We agree.

We begin our analysis by noting we have no quarrel with the trial judge's factual findings. The findings are supported by substantial credible evidence in the record, and we do not disturb them. See In re Return of Weapons to J.W.D., 149 N.J. 108, 116 (1997) ("an appellate court should accept a trial court's findings of fact that are supported by substantial credible evidence"). Our disagreement is with the court's legal

conclusions, to which we owe no deference under our plenary standard of review.  Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995) ("A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference.").

The 2013 gun amnesty law provides in pertinent part that:

> [a]ny person who has in his possession an assault firearm on the effective date of this act may retain possession of that firearm for a period of not more than 180 days after the effective date.  During that time period, the possessor of the assault firearm shall:
>
> (1)  transfer the assault firearm to any person lawfully entitled to own or possess such firearm;
>
> (2)  render the assault firearm inoperable; or
>
> (3)  voluntarily surrender the assault firearm pursuant to the provisions of N.J.S.A. 2C:39-12.
>
> [L. 2013, c. 117, § 2a.]

We cannot find under any construction of this statute that the assault firearms seized from C.L.H. and his wife's home in April 2013 and made the subject of a timely forfeiture petition by the prosecutor in May, were "in his possession" as of the August 8, 2013 effective date of the law.  See DiProspero v. Penn, 183 N.J. 477, 492 (2005) (explaining it is not the function of

courts "to 'rewrite a plainly-written enactment of the Legislature []or presume that the Legislature intended something other than that expressed by way of the plain language'") (quoting O'Connell v. State, 171 N.J. 484, 488 (2002)).  On that date, the weapons were in possession of the prosecutor for safekeeping where they remained through expiration of the amnesty law on February 5, 2014.

Our plain reading of the amnesty statute's meaning is buttressed by the Legislature's requirement that any voluntary surrender under the amnesty law comply with the provisions of N.J.S.A. 2C:39-12.  See DiProspero, supra, 183 N.J. at 492 (directing that statutory words and phrases be read "in context with related provisions so as to give sense to the legislation as a whole").  That separate enactment allows a person to voluntarily surrender firearms to law enforcement without criminal liability "provided that the required [written] notice is received by [law enforcement] before any charges have been made or complaints filed against such person for the unlawful possession of the weapon . . . and before any investigation has been commenced by any law enforcement agency concerning the unlawful possession."  N.J.S.A. 2C:39-12.

The purpose of the limitation is obvious; it is to prevent a person from escaping liability for possession of a weapon by

trying to "voluntarily surrender" it to the authorities after it has already been seized or otherwise come to the attention of law enforcement. Without it, N.J.S.A. 2C:39-12, and the 2013 gun amnesty law, would be transformed from devices to encourage the surrender of firearms to a "free pass" for those the police have already found or suspect to be in illegal possession, a result plainly not intended by the Legislature. As C.L.H.'s counsel's notice to the prosecutor was well after the filing of the complaint for forfeiture, C.L.H. was not entitled to "voluntarily surrender" his assault firearms under the express terms of the gun amnesty law and N.J.S.A. 2C:39-12, even were he somehow deemed to be still in possession of the weapons after they had been confiscated from his and his wife's home.

Having concluded that the 2013 amnesty law cannot be applied to the circumstances here, we must consider whether the trial court could have properly returned the assault weapons to C.L.H., notwithstanding. We think the clear answer to that question is no.

The trial court found that five of the weapons seized from C.L.H. and his wife's home under the Prevention of Domestic Violence Act were assault firearms as defined by N.J.S.A. 2C:39-1w(1), (2) or (4). C.L.H. has not challenged that finding on appeal, and because it is supported by substantial credible

11                                                                          A-0072-14T2

evidence in the record, we do not disturb it. See J.W.D., supra, 149 N.J. at 116. Those weapons are contraband and can never lawfully be returned to C.L.H. N.J.S.A. 2C:39-1w; :39-5f; :64-1a(1). Because the five assault firearms were seized pursuant to the Prevention of Domestic Violence Act and cannot be returned to C.L.H. under the Domestic Violence Forfeiture Statute, N.J.S.A. 2C:25-21d(3), he is expressly disqualified from obtaining a handgun purchase permit or firearms purchaser identification card under the Gun Control Law, N.J.S.A. 2C:58-3c(8), and thus from regaining possession of his seventy-one other firearms and his firearms purchaser identification card held by the prosecutor.

To the extent the trial judge determined forfeiture to be "not equitable," because C.L.H. was not a defendant in the domestic violence complaint, we think he erred. The law is well settled that the Family Part has the authority to order a weapon forfeiture following the dismissal of a domestic violence complaint regardless of whether the dismissal was voluntary or for lack of evidence. See J.W.D., supra, 149 N.J. at 116; State v. Cordoma, 372 N.J. Super. 524, 533-34 (App. Div. 2004); State v. One Marlin Rifle, 319 N.J. Super. 359, 371 (App. Div. 1999); State v. Freysinger, 311 N.J. Super. 509, 514-15 (App. Div. 1998); State v. Volpini, 291 N.J. Super. 401, 412-13 (App. Div.

1996). As the Domestic Violence Forfeiture Statute applies to defendants against whom no domestic violence was ever proved, we see no logical reason to limit its scope to only those accused.

In addition to allowing the issuance of a warrant for the search and seizure of "any firearm" and the seizure of any firearms purchaser identification card or purchase permit "issued to the defendant," N.J.S.A. 2C:25-28j, the Act provides that "a law enforcement officer who has probable cause to believe that an act of domestic violence has been committed shall:"

> (b) upon observing or learning that a weapon is present on the premises, seize <u>any weapon</u> that the officer reasonably believes would expose the victim to a risk of serious bodily injury. If a law enforcement officer seizes <u>any firearm</u> pursuant to this paragraph, the officer shall also seize <u>any firearm purchaser identification card or permit to purchase a handgun issued to the person accused of the act of domestic violence</u>.
>
> [N.J.S.A. 2C:25-21d(1)(b) (emphasis added).]

We must assume the distinction between seizing "any firearm" without restriction as to ownership and seizing only those firearms cards "issued to the person accused of the act of domestic violence" was intentional.[4] A domestic violence

---

[4] The language regarding the seizure of a defendant's firearms card and permit to purchase a handgun was added in the 2003

(continued)

defendant, as here, could well have access to firearms, not her own, that would expose a victim to the risk of serious injury, thus necessitating their temporary seizure for safekeeping. Although it would be unreasonable to seize a domestic violence defendant's firearms for safekeeping but not the documents to allow her to purchase additional weapons, see In re Seized Firearms Identification Card of Hand, 304 N.J. Super. 360, 370 (Ch. Div. 1997), the same is not true for a firearms card belonging to one whose only threat to the victim is posed by the ready accessibility of his weapons to the defendant.

Accordingly, it seems plain that the Legislature intended that weapons, but not firearms cards, could be temporarily seized under the Prevention of Domestic Violence Act from persons who are not defendants in domestic violence complaints. See supra, note 1. Of course, regardless of whether seized from a defendant or some other person, all weapons and any firearms

_____

(continued)
amendment, L. 2003, c. 277. The legislative history does not offer an explanation for differentiating between the seizure of weapons reasonably believed to pose a threat to the victim, regardless of ownership, and the seizure of a firearms card belonging to defendant only. We note, however, that N.J.S.A. 2C:25-21d(3), which governs return of any weapons seized, has since enactment referred to "the owner" and not "the defendant." We take from this that the Legislature has never intended to limit the seizure of firearms under the Act to only those owned by the defendant, but anticipated that some weapons that would pose a threat to the victim by being accessible to the defendant could be owned by others not accused of domestic violence.

cards seized under the Act must be returned to the owner within forty-five days unless the prosecutor, within that period, petitions a judge of the Family Part to obtain title to the weapons or to revoke any permits for their possession on notice to the owner. N.J.S.A. 2C:25-21d(3). If such a person is determined to be disqualified from regaining possession of his weapon under the Domestic Violence Forfeiture Statute, then that person is permanently barred from obtaining a firearms card, see Millburn, supra, 197 N.J. at 246, notwithstanding that he was not a perpetrator of domestic violence or a defendant in the underlying domestic violence action.

By focusing on C.L.H.'s lack of culpability in the circumstances leading to the seizure of his firearms from his and his wife's home under the Prevention of Domestic Violence Act, a fact not critical to the outcome of the forfeiture hearing, the court lost sight of the fact that was critical — that C.L.H. was in possession of five fully-functioning assault rifles. The knowing possession of an unlicensed, operable assault firearm is a crime of the second degree. N.J.S.A. 2C:39-5f. Possession of assault firearms, except under limited circumstances not present here, has been illegal in this State since 1990. N.J.S.A. 2C:58-12. As the trial court noted, at least one of the assault firearms in C.L.H.'s possession was not

imported until 2003, well after the assault weapon ban went into effect. Further, as the testimony also made clear, C.L.H. was knowledgeable and selective about the firearms in his collection. As there is no question on this record but that C.L.H. was in knowing possession of five illegal assault weapons, that those weapons could not be returned under the Domestic Violence Forfeiture Statute was certainly "due to some fault" of C.L.H. Millburn, supra, 197 N.J. at 251.

Because the Domestic Violence Forfeiture Statute expressly allows the prosecutor to petition "to obtain title to the seized weapons, or to revoke any and all permits . . . for the use, possession, or ownership of such weapons pursuant to the law governing such use, possession, or ownership," N.J.S.A. 2C:25-21d(3), and the five illegal assault firearms seized from C.L.H.'s and his wife's home are prima facie contraband in which no property right exists and which are subject to forfeiture under N.J.S.A. 2C:64-1a(1), the court erred in concluding that the forfeiture of those illegal assault firearms was not mandated on the facts it found. We agree with the holding of State v. 6 Shot Colt .357, 365 N.J. Super. 411, 417 (Ch. Div. 2003), that the knowing possession of an assault firearm contrary to this State's gun control laws is sufficient basis for forfeiture under N.J.S.A. 2C:25-21d, without the need to

find that C.L.H. is unfit or a danger to the public under N.J.S.A. 2C:58-3c(5).[5] Accord In re Osworth, 365 N.J. Super. 72, 81 (App. Div. 2003) ("[I]t does not serve public safety to issue a handgun purchase permit to someone who has demonstrated his willingness to disregard the gun laws of this State."), certif. denied, 179 N.J. 310 (2004).

Because the five assault firearms were lawfully seized from C.L.H. and his wife's home pursuant to the Prevention of Domestic Violence Act and cannot be returned to C.L.H. under the Domestic Violence Forfeiture Statute as they are contraband under N.J.S.A. 2C:64-1a(1), C.L.H. is expressly disqualified from obtaining a handgun purchase permit or firearms purchaser identification card under the Gun Control Law, N.J.S.A. 2C:58-3c(8), and thus from regaining possession of his seventy-one other firearms and his firearms purchaser identification card held by the prosecutor.

Accordingly, we reverse and remand for the entry of an order revoking C.L.H.'s firearms purchaser identification card and directing that the five assault weapons be forfeited to the prosecutor for destruction in accord with N.J.S.A. 2C:25-

---

[5] Although not relevant given our disposition of the appeal, we note that we have elsewhere addressed and rejected the arguments C.L.H. makes that the public health and safety exception of N.J.S.A. 2C:58-3c(5) is unconstitutionally vague, see In re Dubov, 410 N.J. Super. 190, 196-97 (App. Div. 2009).

21d(3)(c) and 2C:64-6a, with the remaining weapons to be disposed of by the prosecutor only if C.L.H. does not arrange for their lawful sale in accordance with N.J.S.A. 2C:25-21d(3)(b).

Reversed and remanded for the entry of an order consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION