SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State v. Dasean Harper** (A-74-15) (077427)

**Argued January 30, 2017 -- Decided June 5, 2017**

**RABNER, C.J., writing for the Court.**

The Legislature passed an amnesty bill in 2013 that, "for a period of not more than 180 days from the effective date of [the] act," L. 2013, c. 117, enabled people to dispose of guns they possessed illegally. During that time, the law allowed individuals to transfer or voluntarily surrender firearms. The Court now considers whether the law effectively created a nearly six-month grace period from prosecution for the illegal possession of firearms.

On November 29, 2013, a police officer saw a box truck parked in the wrong direction on a street. He also observed that its tires were partially in the roadway. The officer asked for identification, and each man provided a Pennsylvania driver's license. Defendant Dasean Harper was the driver. The officer checked the identifications through dispatch and learned that defendant had two outstanding arrest warrants. The officer then asked defendant to step out of the truck, told him that he was being placed under arrest, and directed him to put his hands up.

The officer called for backup, handcuffed defendant, and retrieved a gun from defendant's waistband—a Smith & Wesson .357 Magnum revolver loaded with four hollow-point bullets and two slug rounds. During a search, the officer also recovered a concealed-carry permit that the State of Florida had issued to defendant. Defendant said that, because of the permit, he thought he had not done anything wrong.

On February 20, 2014, a grand jury returned an indictment that charged defendant with second-degree unlawful possession of a weapon and fourth-degree possession of hollow-point bullets.

Defendant moved to dismiss the indictment relying, in part, on the Florida permit to claim an exemption from prosecution. Defense counsel represented that defendant lived and worked in Pennsylvania and passed through New Jersey to make a delivery for his job. The trial court denied the motion to dismiss.

A jury convicted defendant on both counts. Defendant filed a timely notice of appeal. He also filed a motion for bail pending appeal. In support of his request, defendant argued for the first time that his handgun conviction was illegal because of the amnesty provision. In a two-page order dated August 5, 2015, the Appellate Division remanded the case to the trial court to conduct a bail hearing and consider the amnesty law.

The trial court granted defendant bail pending appeal and later heard oral argument on the meaning of the amnesty provision. Based on the plain language of the law, the trial court concluded that an individual who unlawfully possessed a handgun on the effective date of the law could keep the firearm and decide how to proceed for the next 179 days.

The court vacated defendant's conviction for unlawful possession of a firearm "because the issue of amnesty was never presented to the finder of fact." The Appellate Division denied the State's motions for leave to appeal and for a stay of the trial court's order.

The Court granted the State's motion for leave to appeal. 226 N.J. 205 (2016).

**HELD**: The amnesty law did not afford defendants blanket immunity for the entire amnesty period. Reading the law in that way would lead to absurd results that the Legislature did not intend. Instead, the law created a period of no more than six months during which people could dispose of weapons they illegally possessed without being prosecuted. The provision affords a defense to those who attempted to comply with its terms. As with other affirmative defenses, a defendant must raise the defense at trial or it is waived.

1

1. The Legislature knows how to grant unconditional immunity and has done so in various ways on other occasions. Here, instead, the Legislature stated that defendants "may retain possession" of a handgun "for a period of not more than 180 days," during which time they must transfer or surrender the firearm. L. 2013, c. 117. That is not a declaration of blanket immunity. (pp. 10-11)

2. To the extent one might think the text of the amnesty provision offers immunity for six months, such a reading of the law would lead to absurd results that are at odds with the overall legislative scheme. If courts interpret the amnesty provision as defendant suggests, the statute would have effectively suspended gun-possession laws for nearly six months and allowed weapons on the street for that entire time. (pp. 11-12)

3. Extrinsic sources offer further insight into the Legislature's intent. On the same day the amnesty provision was enacted, the Governor also signed nine related laws. The package of laws "both strengthen[ed] New Jersey's already tough gun laws and upgrade[d] penalties for those who commit gun crimes and violate gun trafficking laws." Press Release, Office of the Governor, Governor Chris Christie Builds on Comprehensive Plan to Address Gun Violence, Takes Action on Gun Legislation (Aug. 8, 2013). Those bills all went into effect within two months and one day of their signing; none were delayed by six months. (pp. 12-13)

4. In State in Interest of C.L.H.'s Weapons, 443 N.J. Super. 48, 56 (App. Div. 2015), the panel stated that "any voluntary surrender under the amnesty law" had to comply with N.J.S.A. 2C:39-12, which requires a person to provide written notice to law enforcement before authorities file any charges or begin any investigation. Ibid. Otherwise, the panel reasoned, the surrender and amnesty "would be transformed from devices to encourage the surrender of firearms to a 'free pass' for those the police have already found or suspect to be in illegal possession." Id. at 57. The Court agrees with that sound analysis. (pp. 13-14)

5. N.J.S.A. 2C:39-5(b) makes it an offense to possess a handgun "without first having obtained a permit to carry." A defendant charged under that statute for possession during the amnesty period may raise the amnesty law as an affirmative defense. To do so, a defendant must show two things: (1) that he possessed a handgun in violation of N.J.S.A. 2C:39-5(b) or (c) "on the effective date of this act"—in other words, that he unlawfully possessed a handgun on August 8, 2013; and (2) that he took steps to transfer the firearm or voluntarily surrender it during the 180-day period beginning on August 8, 2013, consistent with N.J.S.A. 2C:39-12—that is, before authorities brought any charges or began to investigate his unlawful possession. (pp. 14-15)

6. To invoke the amnesty defense, a defendant must abide by the same settled procedures that apply to other defenses. As with other affirmative defenses, a defendant must timely assert the defense or it is waived. Defendants must give pretrial notice of an amnesty defense and present it at trial. Ignorance of the defense is not an excuse. Because defendant did not claim the affirmative defense at trial, he waived it. (pp. 15-17)

7. Even if defendant had not waived the defense, it is not clear that the amnesty provision would apply to him. The statute is not meant to cover an out-of-state person who travels through New Jersey. In addition, although defendant asserts that he owned the firearm on August 8, 2013, nothing in the record establishes that he (1) was in New Jersey then, and (2) unlawfully possessed a firearm in violation of New Jersey law that day. Also, nothing in the record demonstrates that defendant took steps to transfer or surrender the handgun prior to his arrest. Defendant can file an application for post-conviction relief. The Court does not limit any effort by defendant to establish the requisite proofs and makes no findings on those issues. (pp. 18-19)

The judgment of the Appellate Division is **REVERSED** and defendant's conviction and sentence for unlawful possession of a weapon are **REINSTATED**. The matter is **REMANDED** to the Appellate Division to address any outstanding issues.

**JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.**

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

        v.

DASEAN HARPER,

    Defendant-Respondent.


        Argued January 30, 2017 – Decided June 5, 2017

        On appeal from the Superior Court, Appellate
        Division.

        Jennifer E. Kmieciak, Deputy Attorney
        General, argued the cause for appellant
        (Christopher S. Porrino, Attorney General of
        New Jersey, attorney).

        Joshua D. Sanders, Assistant Deputy Public
        Defender, argued the cause for respondent
        (Joseph E. Krakora, Public Defender,
        attorney).


    CHIEF JUSTICE RABNER delivered the opinion of the Court.

    The Legislature passed an amnesty bill in 2013 that, "for a

period of not more than 180 days from the effective date of

[the] act," L. 2013, c. 117, enabled people to dispose of guns

they possessed illegally.  During that time, the law allowed

individuals to transfer or voluntarily surrender firearms.  We

now consider whether the law effectively created a nearly six-

month grace period from prosecution for the illegal possession of firearms.

In this case, a jury convicted defendant Dasean Harper of unlawful possession of a weapon -- a .357 Magnum revolver loaded with hollow-point bullets. One year later, defendant argued for the first time on appeal that, in light of the amnesty provision, his possession of the handgun was lawful. On remand, the trial court vacated the conviction based on the language of the amnesty law. The Appellate Division denied the State's motion for leave to appeal.

We find that the amnesty law did not afford defendants blanket immunity for the entire amnesty period. Reading the law in that way would lead to absurd results that the Legislature did not intend. It would permit violent criminals to carry weapons in public with impunity, for almost 180 days, and remain free from prosecution so long as they transferred or voluntarily surrendered their firearms just before the end of the amnesty period.

Instead, the law created a period of no more than six months during which people could dispose of weapons they illegally possessed without being prosecuted. The provision affords a defense to those who attempted to comply with its terms. As with other affirmative defenses, a defendant must raise the defense at trial or it is waived.

2

Here, defendant did not argue at trial that the amnesty law provided a defense to the charge. He did not offer proof that he attempted to transfer or surrender his handgun. In short, he waived the affirmative defense. We therefore reverse and reinstate his conviction.

I.

We draw the following facts from the trial record. On November 29, 2013, a police officer on patrol in Pennsville saw a box truck parked in the wrong direction on a street. He also observed that its tires were over the fog line, partially in the roadway. The officer approached the driver and passenger, who explained that they were looking for the right address to make a delivery. The officer asked for identification, and each man provided a Pennsylvania driver's license. Defendant was the driver.

The officer checked the identifications through dispatch and learned that defendant had two outstanding arrest warrants. The officer then asked defendant to step out of the truck, told him that he was being placed under arrest, and directed him to put his hands up.

Defendant complied and told the officer, "I want to let you know, I have a gun on me, a handgun on me." The officer called for backup, handcuffed defendant, and retrieved a gun from defendant's waistband -- a Smith & Wesson .357 Magnum revolver

loaded with four hollow-point bullets and two slug rounds. During a search, the officer also recovered a concealed-carry permit that the State of Florida had issued to defendant. Defendant said that, because of the permit, he thought he had not done anything wrong.

On February 20, 2014, a grand jury in Salem County returned an indictment that charged defendant with second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (Count One), and fourth-degree possession of hollow-point bullets, N.J.S.A. 2C:39-3(f) (Count Two).

Defendant moved to dismiss the indictment before trial. He relied, in part, on the Florida permit to claim an exemption from prosecution under N.J.S.A. 2C:39-6. At a hearing on the motion, defense counsel represented that defendant lived and worked in Pennsylvania and passed through New Jersey to make a delivery for his job. The trial court denied the motion to dismiss and also held that defendant was properly denied entry into the pretrial intervention program (PTI).

A jury convicted defendant on both counts. The trial court sentenced defendant to five years' imprisonment, with forty-two months of parole ineligibility, on Count One. The court imposed a 364-day concurrent term of imprisonment on Count Two.

Defendant filed a timely notice of appeal. He also filed two motions before the Appellate Division: one for a limited

remand to reconsider his application for PTI, which is not relevant to this appeal, and another for bail pending appeal. In support of his request, defendant argued for the first time that his handgun conviction was illegal because of the amnesty provision. In a two-page order dated August 5, 2015, the Appellate Division remanded the case to the trial court to conduct a bail hearing and consider the amnesty law.

The following week, the trial court granted defendant bail pending appeal. The court later heard oral argument on the meaning of the amnesty provision. According to defense counsel, the law allowed an individual to "retain possession" of a weapon during the six-month amnesty period provided he otherwise complied with the statute by "Day 180." After that, defendant argued, the police could return, ask the individual if he had disposed of the gun, and seek to prosecute him if he had not.

Based on the plain language of the law, the trial court concluded that an individual who unlawfully possessed a handgun on the effective date of the law could keep the firearm and decide how to proceed for the next 179 days. To the extent the law might "create[] some interest[ing] fact scenarios" in which criminal conduct "becomes not criminal because of the statute," the court concluded that the words of the law reflected the Legislature's intent.

In an order dated February 8, 2016, the court vacated defendant's conviction for unlawful possession of a firearm "because the issue of amnesty was never presented to the finder of fact."  The Appellate Division denied the State's motions for leave to appeal and for a stay of the trial court's order.

We granted the State's motion for leave to appeal.  226 N.J. 205 (2016).

## II.

The State, represented by the Attorney General, argues that the trial court erred when it vacated defendant's conviction for unlawful possession.  The State submits that the amnesty provision did not confer "blanket immunity for six months to all illegal firearms possessors, regardless of whether they were even attempting to comply with the law."  Instead, the State contends that the Legislature intended to encourage people to comply with the law expeditiously.  The State relies on the law's plain language and legislative history for support, and claims that its reading of the statute is consistent with the law's purpose to promote public safety.

According to the State, the law requires "the unlawful possessor to take affirmative steps to dispose of the illegal weapon."  In any event, because defendant failed to raise the provision as an affirmative defense at trial, the State argues that he waived the issue.

6

Defendant asserts that the trial court's ruling should not be disturbed. As he did before the trial judge, defendant argues that the amnesty provision is "unambiguous on its face" and allows for only one interpretation: that defendant "still had time to comply with the Amnesty Provision at the time he was charged." Defendant maintains that only "those who . . . failed to comply with the Amnesty Provision prior to the sunset date" could be prosecuted for unlawfully possessing firearms. Here, defendant contends, "the State's own actions in charging" him prevented him from complying.

Defendant contends that the Legislature acted to reduce the number of illegal firearms in the community and encourage individuals to transfer them. He disputes that the law was meant to operate as an affirmative defense. He argues in the alternative that, if the law is not clear, the rule of lenity requires that it be construed against the State.

III.

A.

At the heart of this appeal is the meaning of L. 2013, c. 117, which we refer to as the amnesty provision. Governor Christie signed the law on August 8, 2013 as part of a series of ten bills the Legislature passed.

The amnesty provision created a path for people to transfer or surrender firearms that they possessed unlawfully, during a

7

fixed period of time, without fear of prosecution.  The law provided that

> [a]ny person who has in his possession a handgun in violation of [N.J.S.A. 2C:39-5(b)] or a rifle or shotgun in violation of [N.J.S.A. 2C:39-5(c)] on the effective date of this act may retain possession of that handgun, rifle, or shotgun for a period of not more than 180 days after the effective date of this act. During that time period, the possessor of that handgun, rifle, or shotgun shall:
>
> > (1) transfer that firearm to any person lawfully entitled to own or possess it; or
> >
> > (2) voluntarily surrender that firearm pursuant to the provisions of N.J.S.A. 2C:39-12.
>
> [L. 2013, c. 117, § 1.]

Section 2 of the law contained a similar provision for assault firearms and added a third way to comply:  a person could transfer or surrender the assault firearm, or "render [it] inoperable."  L. 2013, c. 117, § 2.  The amnesty provision became effective on August 8, 2013, and was set to "expire on the 181st day after enactment."  L. 2013, c. 117, § 3.

The amnesty provision referenced two other statutes. N.J.S.A. 2C:39-5 makes it an offense to possess certain types of weapons, and N.J.S.A. 2C:39-12 addresses voluntary surrender. Under N.J.S.A. 2C:39-5(b), it is unlawful for any person to "knowingly ha[ve] in his possession any handgun, including any antique handgun, without first having obtained a permit to

8

carry." N.J.S.A. 2C:39-5(c) makes it unlawful for any person to "knowingly ha[ve] in his possession any rifle or shotgun without having first obtained a firearms purchaser identification card."

The voluntary surrender provision provides in relevant part that

> [n]o person shall be convicted of an offense under this chapter for possessing any firearms, weapons, destructive devices, silencers or explosives, if after giving written notice of his intention to do so, including the proposed date and time of surrender, he voluntarily surrendered the weapon, device, instrument or substance in question to the superintendent or to the chief of police in the municipality in which he resides, provided that the required notice is received by the superintendent or chief of police before any charges have been made or complaints filed against such person for the unlawful possession of the weapon, device, instrument or substance in question and before any investigation has been commenced by any law enforcement agency concerning the unlawful possession.
>
> [N.J.S.A. 2C:39-12.]

## B.

This case raises questions about the scope of the amnesty provision. Our review of the statute is de novo. State v. Gorthy, 226 N.J. 516, 530 (2016). To interpret the law, we turn to certain basic principles of statutory construction.

A court's responsibility "is to give effect to the intent of the Legislature." State v. Morrison, 227 N.J. 295, 308 (2016). To do so, we start with the plain language of the

9

statute.  If it clearly reveals the Legislature's intent, the inquiry is over.  DiProspero v. Penn, 183 N.J. 477, 492 (2005).  If a law is ambiguous, we may consider extrinsic sources including legislative history.  Parsons ex rel. Parsons v. Mullica Twp. Bd. of Educ., 226 N.J. 297, 308 (2016).  We also look to extrinsic aids if a literal reading of the law would lead to absurd results.  Burnett v. County of Bergen, 198 N.J. 408, 425 (2009); see also State v. Provenzano, 34 N.J. 318, 322 (1961) ("It is axiomatic that a statute will not be construed to lead to absurd results.").

In addition, a law that is part of a broader "statutory framework should not be read in isolation"; we instead consider the text "in relation to other constituent parts so that a sensible meaning may be given to the whole of the legislative scheme."  Wilson ex rel. Manzano v. City of Jersey City, 209 N.J. 558, 572 (2012).

C.

Defendant argues that, in light of the law's plain language, he and others cannot be prosecuted for possession of a handgun during the 180-day amnesty period.  The law, however, does not say that.

The Legislature knows how to grant unconditional immunity and has done so in various ways on other occasions.  See, e.g., N.J.S.A. 2C:20-11 (noting that merchants "shall not be

10

criminally or civilly liable in any manner or to any extent whatsoever" under certain circumstances (emphasis added)); N.J.S.A. 2C:33-15(f) (noting underage person who calls 9-1-1 "shall be immune from prosecution" under certain circumstances (emphasis added)); see also N.J.S.A. 2A:4A-32(d) (noting that law enforcement officer "is immune from civil or criminal liability for his action" under certain circumstances (emphasis added)).

Here, instead, the Legislature stated that defendants "may retain possession" of a handgun "for a period of not more than 180 days," during which time they must transfer or surrender the firearm. L. 2013, c. 117. That is not a declaration of blanket immunity.

To the extent one might think the text of the amnesty provision offers immunity for six months, such a reading of the law would lead to absurd results that are at odds with the overall legislative scheme. See Wilson, supra, 209 N.J. at 572.

Consider the following example. If a gang member possessed a handgun in public without a carry permit before the amnesty provision went into effect, he could of course have been arrested and charged with a crime under N.J.S.A. 2C:39-5(b). But suppose the gang member unlawfully possessed a handgun on August 8, 2013, and carried it in public without a permit the next day. Under defendant's reading of the law, had a police

11

officer stopped that person on August 9, the officer could not have arrested the individual and would have been required to return the gun.

Imagine the same gang member walking the streets the next day with the same handgun. If the police had stopped the individual, they would have had to return the weapon once again. According to defendant, the same scenario could be repeated each day for nearly six months with the same result -- so long as the gang member transferred or voluntarily surrendered the firearm in accordance with the amnesty provision on or before Day 180. In other words, the law would have given gang members and others a free pass to carry weapons in public for almost six full months -- and place public safety at risk.

Defendant argues that the amnesty provision was designed to remove unlawful guns from the street. But if courts interpret the amnesty provision as defendant suggests, the statute would have effectively suspended gun-possession laws for nearly six months and allowed weapons on the street for that entire time.

Extrinsic sources offer further insight into the Legislature's intent. Although the legislative history of the amnesty provision is sparse, we cannot conclude that the Legislature intended the absurd result highlighted above. Such an outcome would be at odds with the State's overall scheme to restrict the unlawful possession of firearms and protect public

12

safety, and would be inconsistent with other bills that became law on August 8, 2013.

On the same day the amnesty provision was enacted, the Governor also signed nine related laws. The package of laws "both strengthen[ed] New Jersey's already tough gun laws and upgrade[d] penalties for those who commit gun crimes and violate gun trafficking laws." Press Release, Office of the Governor, Governor Chris Christie Builds on Comprehensive Plan to Address Gun Violence, Takes Action on Gun Legislation (Aug. 8, 2013). One of the laws declared a "public health crisis" in the wake of multiple instances of gun violence and mass shootings throughout the country. L. 2013, c. 109. Other new statutes enhanced penalties for certain firearms offenses, L. 2013, c. 108; L. 2013, c. 111; L. 2013, c. 113, and disqualified people on the federal Terrorist Watchlist from obtaining a firearm identification card or a permit to purchase a handgun, L. 2013, c. 114. Those bills all went into effect within two months and one day of their signing; none were delayed by six months.

Only one reported decision addresses the amnesty provision. In State in Interest of C.L.H.'s Weapons, 443 N.J. Super. 48, 51 (App. Div. 2015), the police seized five illegal assault rifles, under the Prevention of Domestic Violence Act, from the home C.L.H. shared with his wife. The seizure took place in April 2013 -- several months before the amnesty provision became law.

13

Ibid.  In December 2013, after the prosecutor filed a petition for forfeiture, C.L.H.'s lawyer wrote that C.L.H. intended to transfer the illegal weapons under the amnesty provision.  Id. at 52-53.  Because the firearms were not in C.L.H.'s possession on August 8, 2013, the law's effective date, the Appellate Division found that the amnesty provision did not apply.  Id. at 56.

The panel added that "any voluntary surrender under the amnesty law" had to comply with N.J.S.A. 2C:39-12, which requires a person to provide written notice to law enforcement before authorities file any charges or begin any investigation. Ibid.  Otherwise, the panel reasoned, the surrender and amnesty "would be transformed from devices to encourage the surrender of firearms to a 'free pass' for those the police have already found or suspect to be in illegal possession, a result plainly not intended by the Legislature."  Id. at 57.

We agree with that sound analysis.

IV.

To give full effect to the amnesty provision, we read it in harmony with, and in the context of, other laws relating to the unlawful possession of firearms.  See State v. Moran, 202 N.J. 311, 323 (2010).

N.J.S.A. 2C:39-5(b) makes it an offense to possess a handgun "without first having obtained a permit to carry."  A

14

defendant charged under that statute for possession during the amnesty period may raise the amnesty law as an affirmative defense. To do so, a defendant must show two things: (1) that he possessed a handgun in violation of N.J.S.A. 2C:39-5(b) or (c) "on the effective date of this act" -- in other words, that he unlawfully possessed a handgun on August 8, 2013; and (2) that he took steps to transfer the firearm or voluntarily surrender it during the 180-day period beginning on August 8, 2013, consistent with N.J.S.A. 2C:39-12 -- that is, before authorities brought any charges or began to investigate his unlawful possession. L. 2013, c. 117; N.J.S.A. 2C:39-12.[1]

To invoke the amnesty defense, a defendant must abide by the same settled procedures that apply to other defenses. He must give pretrial notice of his intention to rely on the amnesty provision. See R. 3:12-1 ("No later than seven days before the Initial Case Disposition Conference . . . the defendant shall serve on the prosecutor a notice of intention to claim any of the defenses listed herein."). A defendant also has the burden to raise the defense at trial.[2] Cf. State v.

---

[1] Our focus in this case is on the first paragraph of the amnesty provision. Related principles apply to the second paragraph as well.

[2] To protect against self-incrimination concerns, statements a defendant makes to establish an amnesty defense -- namely, that he unlawfully possessed a weapon on or shortly before August 8, 2013 -- cannot be used as substantive evidence of guilt in a

15

Toscano, 74 N.J. 421, 442 (1977) (noting "defendant shall have the burden of producing sufficient evidence" of duress); State v. Abbott, 36 N.J. 63, 72 (1961) (same for self-defense); see also N.J.S.A. 2C:1-13(b)(1) (noting prosecution need not disprove "an affirmative defense unless and until there is evidence supporting such defense").

Once raised, the State must rebut the defense and disprove it beyond a reasonable doubt. See, e.g., State v. Urbina, 221 N.J. 509, 525 (2015) (self-defense); see also N.J.S.A. 2C:1-13. Indeed, a revised model jury charge for assault firearms relates to the amnesty provision and makes that very point: "If the defendant alleges that the assault firearm was lawfully possessed and/or rendered inoperable during the time frame of August 8, 2013 to February 5, 2014, the State must disprove that defense beyond a reasonable doubt." Model Jury Charges (Criminal), "Possession of an Assault Firearm (N.J.S.A. 2C:39-5(f))" (revised Oct. 6, 2014).

As with other affirmative defenses, a defendant must timely assert the defense or it is waived. See 24 James W. Moore et

---

separate proceeding. Cf. Simmons v. United States, 390 U.S. 377, 394, 88 S. Ct. 967, 976, 19 L. Ed. 2d 1247, 1259 (1968) (noting that statements made by defendant to support suppression motion cannot be used "against him at trial on the issue of guilt"); State v. Whitlow, 45 N.J. 3, 16 (1965) (noting that use of inculpatory statements made during defendant's psychiatric examination "is limited to the sanity issue and may not be used as substantive evidence of guilt").

16

al., Moore's Federal Practice, § 612.05 (Matthew Bender 3d ed.) (explaining that "various affirmative defenses" under Federal Rules of Criminal Procedure "are generally forfeited by failure to raise them before trial"). Our court rules give judges discretion to bar witnesses, grant an adjournment, or grant a "delay during trial as the interest of justice demands" when a defendant fails to provide pretrial notice of a defense. R. 3:12-1. But the rules do not contemplate a defendant raising an affirmative defense for the first time after trial.

A defendant convicted of murder cannot claim on direct appeal that he is entitled to a new trial because the jury did not consider self-defense. A drug dealer cannot raise entrapment as a defense after the jury's verdict. The same is true here. Defendants must give pretrial notice of an amnesty defense and present it at trial.[3] Ignorance of the defense is not an excuse. See Moran, supra, 202 N.J. at 320; accord Barlow v. United States, 32 U.S. 404, 411, 8 L. Ed. 728, 731 (1833).

V.

In this case, defendant first raised the amnesty provision before the Appellate Division. Because he did not claim the affirmative defense at trial, he waived it.

---

[3] A defendant, of course, can claim that counsel was ineffective for not presenting an affirmative defense at trial in an application for post-conviction relief.

17

Even if defendant had not waived the defense, it is not clear that the amnesty provision would apply to him. At the time of his arrest on November 29, 2013, defendant lived and worked in Pennsylvania. When the police approached defendant and his passenger on that day, they explained that they were in New Jersey to make a delivery.

The statute is not meant to cover an out-of-state person who travels through New Jersey; it is designed to allow someone who possessed a handgun in violation of N.J.S.A. 2C:39-5 "on the effective date of [the] act" to transfer or voluntarily surrender the firearm. L. 2013, c. 117. To comply with the law, an out-of-state resident could have simply returned home; he would not have needed to transfer or surrender a firearm in New Jersey.

In addition, although defendant asserts that he owned the firearm on August 8, 2013, nothing in the record establishes that he (1) was in New Jersey then, and (2) unlawfully possessed a firearm in violation of New Jersey law that day. See ibid. Also, nothing in the record demonstrates that defendant took steps to transfer or surrender the handgun prior to his arrest.

Defendant can file an application for post-conviction relief and try to demonstrate that his counsel was ineffective for not raising the amnesty defense at trial. See R. 3:22-1 to -13; see also Strickland v. Washington, 466 U.S. 668, 687, 104

18

S. Ct. 2052, 2064, 80 L. Ed. 2d 674, 693 (1984); State v. Fritz, 105 N.J. 42, 58 (1987).  We do not limit any effort by defendant to establish the requisite proofs, and we make no findings on those issues.  But for defendant to be entitled to a new trial, he must demonstrate not only that counsel's performance was deficient but also that he was prejudiced by counsel's failure to raise the amnesty defense at trial.  See Strickland, supra, 466 U.S. at 687, 104 S. Ct. at 2064, 80 L. Ed. 2d at 693; Fritz, supra, 105 N.J. at 52.

We do not consider the rule of lenity.  The doctrine applies when an alleged ambiguity in a statute is not resolved by analyzing the law's text and any extrinsic aids.  See State v. Regis, 208 N.J. 439, 452 (2011); State v. Fleischman, 189 N.J. 539, 553 n.4 (2007).  That is not the case here.

VI.

For the reasons set forth above, we reverse the order of the trial court and reinstate defendant's conviction and sentence for unlawful possession of a weapon.  We remand to the Appellate Division to address any outstanding issues.  Defendant may seek other relief consistent with the principles outlined in this opinion.


JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in CHIEF JUSTICE RABNER's opinion.

19