**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0634-20

IN THE MATTER OF THE
SEIZURE OF WEAPONS
BELONGING TO W.W.[1]

_____

Submitted September 20, 2021 – Decided October 6, 2021

Before Judges Mayer and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FO-02-0234-20.

The Tormey Law Firm, attorneys for appellant (Brent DiMarco, on the brief).

Mark Musella, Bergen County Prosecutor, attorney for respondent (William P. Miller, Assistant Prosecutor, of counsel; Catherine A. Foddai, Legal Assistant, on the brief).

PER CURIAM

Defendant W.W. appeals from an October 19, 2020 order granting the

State's application for forfeiture of his firearms and Firearms Purchaser

_____
[1] We refer to the parties by initials to protect their privacy.  R. 1:38-3(c)(7).

Identification Card (FPIC) based on the judge's finding he posed a threat to public safety, health, or welfare. N.J.S.A. 2C:58-3(c)(5). We affirm.

The judge conducted a testimonial hearing over the course of three non-consecutive days in August, September, and October 2020. The following witnesses testified on behalf of the State: W.W.'s ex-wife, K.W.; Ryan Sokerka, a detective sergeant with the Emerson Police Department; and detective Randy Velez, also with the Emerson Police Department. In addition to his own testimony, W.W. presented the testimony of Robert Hoffman and Fred Maltzam.

The following facts are derived from the testimony and documentary evidence presented to the judge.

On October 18, 2018, W.W. was arrested for harassment and cyber-harassment of K.W. As a result of his arrest, the Emerson Police Department seized W.W.'s firearms and FPIC. Although these charges were eventually dismissed on December 18, 2018, the State petitioned for forfeiture of W.W.'s firearms and revocation of his FPIC.

By way of background, W.W. and K.W. were married from 1992 to 2018. On September 18, 2018, K.W. contacted the police because she saw flyers "posted all over town that were disparaging to [K.W.], trying to embarrass [her] and [her] family." The flyers accused K.W. of infidelity and showed a picture

of K.W.'s uncut and untidy lawn. K.W. was running for re-election to a position on the township council when the flyers appeared. She suspected W.W. posted the documents in retribution for her seeking a divorce.

Additional flyers disparaging K.W. appeared throughout the township around October 19, 2018. K.W. again contacted the police, decided to press charges, and W.W. was arrested. A final judgment of divorce was issued about two weeks after W.W.'s arrest. Ultimately, K.W. elected not to pursue the harassment and cyber-harassment charges and signed a consent order for civil restraints as part of the final judgment of divorce.

Regarding W.W.'s fitness to possess weapons, K.W. testified, "guns are [W.W.'s] favorite thing in life. I know that he collected them for hunting and for whatever other purpose . . . . [H]e never used a gun on anyone . . . , myself or my children, never threatened me with one. However, they were present in the house, they were locked." K.W. testified regarding prior incidents of domestic violence that included the destruction of property. During one incident, K.W. explained W.W. threw an iPad at her and injured her nose. K.W. described W.W. as "verbally and emotionally abusive" and stated she "walk[ed] around on tip toes . . . because you never knew how he would react if he was in

a bad mood." None of the incidents identified by K.W. were reported to the police.

Detective Sergeant Sokerka, responsible for background investigations and management of applications for firearms permits, also testified. According to Sokerka, his department reviewed several incidents involving W.W.

In April 2018, Sokerka received a phone call from the department's retired police chief,[2] expressing concern regarding W.W.'s mental health and well-being. The retired police chief explained W.W. had a large collection of firearms and ammunition and was acting strangely toward his family members.

In August 2018, Velez[3] responded to shouting from outside the family home. On that date, W.W. was yelling at his son for removing political lawn signs so the son could mow the grass at the family home. Velez described W.W.'s reaction as inappropriate for the situation.

Sokerka also testified regarding the flyer incident in September 2018. According to Sokerka, "[t]here were signs that were hung up on all the telephone poles, all over vehicles, all around the schools, it was all defamatory in nature

---

[2] The retired police chief is W.W.'s cousin.

[3] Velez's testimony was consistent with the testimony offered by Sokerka.

A-0634-20

towards [W.W.]'s ex-wife. It was almost like an anti-political flyer that was hung all around town."

Sokerka further testified about derogatory letters mailed to various people in the township. The letters accused K.W. of having an affair and claimed she was a poor candidate for reelection to the township council. The letters and flyers caused K.W. distress. After collecting the letters, Sokerka launched an investigation, and compared the handwriting on envelopes with the handwriting on W.W.'s firearms application. According to Sokerka, the handwriting was consistent, with "a couple of characters that were almost identical."

The police investigation then paused until October 2018 when the harassment against K.W. turned to online postings. W.W. posted disparaging messages about K.W. on the township's Facebook page. Soon after these postings, flyers reappeared around town. On October 19, 2018, the police charged W.W. with harassment and cyber-harassment "based on the totality of the circumstances and the online harassment in conjunction with continued ongoing harassment with the flyers."

During the investigation, the police received a handwritten note from a friend of W.W. and K.W. The friend provided "pretty good detail about [W.W.]'s mental well-being and how [the author] was worried for [K.W.]."

5

W.W. was arrested on October 20, 2018, held over the weekend, and released from jail on October 22, 2018. Upon his release, W.W. was not allowed to possess any firearms. The police seized W.W.'s weapons[4] and FPIC. Most of the guns were seized from the residence of W.W.'s friend in Emerson. One gun was seized in Staten Island.

Sokerka told the judge W.W. should not have weapons because "during the totality of this investigation, and multiple cases that were involved it was determined that [W.W.] was unstable from family members, close family members that were worried for his well-being, and the well-being of his children and also ex-wife."

Robert Hoffman, the township's administrator, testified on behalf of W.W. According to Hoffman, on September 19, 2018, he noticed a flyer near the municipal building. Hoffman took down the flyer because it related to a political campaign and he felt it was appropriate to remove the document. He testified the flyer "was out of the ordinary for any election[] at the municipal level."

---

[4] At total of fifteen weapons were confiscated, including handguns and long guns.

A-0634-20

W.W. then testified on his own behalf. Prior to college, W.W. enlisted in the military and then joined the National Guard. W.W. received weapons training during his time in the military.

In 2008, W.W. believed K.W. was having an affair and asked for police assistance in removing K.W. from the home. He subsequently reconciled with K.W., and the two lived together until K.W. filed for divorce in March 2018.

According to W.W., upon receiving the divorce complaint, the "the first thing [he] did was . . . remove the weapons from the house as a safety precaution," giving most of his guns to a close friend in Emerson. After his arrest, W.W. declined to provide the location of his weapons. After the police advised him of the requirement to forfeit his guns, W.W. provided the address where his guns were stored. The charges against W.W. were subsequently dismissed, and W.W.'s arrest record was expunged in December 2019.

During his testimony, W.W. provided a different version of the events. W.W. explained he was campaigning for political office and placed a campaign sign in support of his candidacy on the lawn in front of his house. According to W.W., his son removed the campaign sign from the lawn and the two argued. The son eventually called the police who spoke to W.W. and his son regarding their argument.

A-0634-20

W.W. also disputed K.W.'s testimony regarding his destruction of property, including an iPad. W.W. admitted he threw the iPad, but explained there was no intent to hit K.W. with the computer.

W.W.'s friend for twenty years, Fred Maltzman, testified on W.W.'s behalf. Maltzman told the judge he and W.W. spend a lot of time together. He described W.W. as honest, helpful, and charitable. Maltzman never witnessed W.W. exhibit anger problems and did not consider W.W. to be a violent person.

After hearing the testimony and reviewing the documentary evidence, the judge granted the State's motion to compel the forfeiture of W.W.'s weapons. The judge found the State met its burden under N.J.S.A. 2C:58-3(c)(5) by a preponderance of the evidence, finding "no handgun purchase, permit, or firearms purchaser identification number may be issued to any person where the issuance would not be in the best interest of the public health, safety, or welfare." The judge made his determination after "careful consideration of both the individual history of [W.W.'s] interaction with [K.W.], as well as an assessment of the threat that [W.W.] may pose to the general public."

In determining the credibility of the testifying witnesses, the judge applied the factors enumerated in the credibility section of the Model Jury charge. The judge noted W.W.'s response upon learning K.W. wanted a divorce was to

8

"take[] the weapons and . . . give[] them to a third party." The judge found W.W.'s reaction "to be out of the ordinary." The judge did not accord much weight to the retired police chief's opinion about W.W. possessing weapons "because the [c]ourt doesn't know the family dynamics between . . . former chief . . . and [W.W.]." Overall, the judge "found the testimony of the police officers and [K.W.] to be credible" and "the testimony of [W.W.] not to be credible" because W.W. "had a certain revisionist version of history."

The judge concluded W.W. lacked sound judgment based on following findings: (1) the posting of disparaging flyers throughout the municipality on two separate dates; (2) sending letters accusing K.W. of infidelity just before her re-election effort; (3) arguing with his son on the front lawn of the home, causing a patrolling police officer to investigate; (4) ripping a bathroom door off the hinges; (5) tossing an iPad over his shoulder and striking K.W. on the nose; and (6) self-reporting an incident of driving while intoxicated. Based on these events, the judge found "there was a general lack of stability in the judgment of [W.W.]." The judge expressed concern that W.W. "didn't trust himself enough to have guns in the house, that he had to give those guns to a third party." The Emerson Police Department also recommended against returning W.W.'s firearms. The judge stated, "these issues indicate to this

9

[c]ourt that this individual should not in fact have the return of his FPIC and his weapons" and "the activities described and testified to depict [W.W.] as someone who poses a danger to the general public."  He concluded, "giving weapons back to [W.W.] would in fact be an invitation to tragedy."

On appeal, W.W. argues the following point:

POINT I

> THE STATE FAILED TO ESTABLISH THAT [W.W.] POSED A DANGER TO THE PUBLIC HEALTH, SAFETY OR WELFARE.

Our review of a forfeiture of firearms and FPIC is deferential.  In re Forfeiture of Pers. Weapons & Firearms Identification Card belonging to F.M., 225 N.J. 487, 505-06 (2016).  "[A] judicial declaration that a defendant poses a threat to the public health, safety, or welfare involves, by necessity, a fact-sensitive analysis[.]"  Id. at 505 (quoting State v. Cordoma, 372 N.J. Super. 524, 535 (App. Div. 2004)).  We "should accept a trial [judge's] findings of fact that are supported by substantial credible evidence."  Ibid. (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 116-17 (1997)).  "The State retains the statutory right to seek the forfeiture of any seized firearms provided it can show that defendant is afflicted with one of the legal 'disabilities' enumerated in N.J.S.A. 2C:58-3(c)."  Cordoma, 372 N.J. Super. at 533.

A-0634-20

The Domestic Violence Forfeiture Statute, N.J.S.A. 2C:25-21, provides "a law enforcement officer may arrest a person . . . where there is probable cause to believe that an act of domestic violence has been committed." N.J.S.A. 2C:25-21(b). A law enforcement officer who has probable cause to believe an act of domestic violence has been committed, shall determine whether there are any weapons, N.J.S.A. 2C:25-21(d)(1)(a), and may "seize any weapon that the officer reasonably believes would expose the victim to a risk of serious bodily injury." N.J.S.A. 2C:25-21(d)(1)(b). "[T]he Domestic Violence Forfeiture Statute applies to defendants against whom no domestic violence was ever proved[.]" State in the Int. of C.L.H.'s Weapons, 443 N.J. Super. 48, 58 (App. Div. 2015).

Under N.J.S.A. 2C:58-3(c)(5), firearms or FPIC shall not be issued "[t]o any person where the issuance would not be in the interest of the public health, safety or welfare." The statute was "intended to relate to cases of individual unfitness, where, though not dealt with in the specific statutory enumerations, the issuance of the permit or identification card would nonetheless be contrary to the public interest." In re Osworth, 365 N.J. Super. 72, 79 (App. Div. 2003) (quoting Burton v. Sills, 53 N.J. 86, 91 (1968)).

W.W. asserts the State did not meet its burden of establishing he was a danger to the public health, safety, or welfare, arguing the lack of a criminal record and the absence of any filed domestic violence complaint.[5] Here, the police had probable cause to arrest defendant based on his harassment of K.W. even though she did not seek a temporary restraining order. The police investigated the flyer incidents and the letters sent to K.W.'s family and friends and concluded W.W. was the source of the harassing conduct. The absence of a filed domestic violence complaint does not require the automatic return of firearms seized by law enforcement officers. N.J.S.A. 2C:25-21. In this case, the judge reviewed the evidence and concluded the return of the weapons to W.W. was not "in the interest of public health, safety, or welfare." N.J.S.A. 2C:58-3(c)(5).

We are satisfied the State met its burden of proving by a preponderance of the evidence that forfeiture of W.W.'s firearms and FPIC was warranted. The judge conducted the required fact-sensitive analysis, weighed the credibility of the witnesses, and considered the totality of the evidence in concluding W.W.'s

---

[5] Harassment, if proven, would have supported the issuance of a temporary or final restraining order under the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. The fact that K.W. elected not to seek a restraining order under the PDVA does not alter the State's right to seek forfeiture of W.W.'s weapons and FPIC under N.J.S.A. 2C:58-3.

firearms and FPIC must be forfeited.  Based on the evidence, the judge held W.W. failed to exhibit proper restraint and judgment and his decision is supported by sufficient credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0634-20